GEORGE POOLEY, Respondent, *v.* THE CITY OF BUFFALO, Appellant.

The payment of a municipal assessment for a local improvement which is invalid by reason of defects in the proceedings of the common council on which it was based, appearing by the records that body is required by law to keep, is a mistake of law, and an action cannot be maintained to recover back the amount paid.

*It seems*, that when the facts which render an assessment, apparently a lien upon land, invalid for want of jurisdiction to make it, are *de hors* the record, the person paying it will be deemed to have done so involuntarily and may recover back the amount paid without first vacating the assessment.

*It seems* also, that when payment of an assessment is produced by coercion of law or unlawful exaction, under process for its collection, valid on its face, it is not a voluntary payment and may be recovered back.

Under the provisions of the charter of the city of Buffalo (§ 14, tit. 6, chap. 519, Laws of 1870) to enable persons interested to file objections to an assessment for a local improvement, the city clerk is required when the assessment-roll is delivered to him to publish a notice in five successive numbers of the official paper, that the roll is in his office and that objections may be filed with him within ten days from the first publication of the notice. A notice in pursuance of a resolution ordering the assessment was published in five successive numbers, the first publication being on the same day the resolution was approved by the mayor, but before it was approved. *Held,* that the publication was valid; that the general rule that fractions of a day will not be regarded in law, except for the purpose of preventing injustice was applicable.

(Submitted October 29, 1890; decided December 9, 1890.)

Appeal from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made May 16, 1888, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank C. Laughlin* and *W. F. Worthington* for appellant. The payments of the assessments in question were voluntarily made and cannot be recovered. (Laws of 1870, chap. 519, § 23 ; Laws of 1885, chap. 181 ; *Phelps* v. *Mayor, etc.*, 112 N. Y. 216 ; Laws of 1882, chap. 410; *Diefenthaler* v. *Mayor, etc.*, 111 N. Y. 331 ; *Wilcox* v. *Mayor, etc.*, 21 J. & S. 436 ; *N. Y. & H. R. R. Co.* v. *Marsh*, 12 N. Y. 308 ; Cooley on Tax. 808, 814 ; Burrows on Tax. 267, 443 ; Desty on Tax. 491, 495, 497 ; *C. Bank* v. *Rochester*, 42 Barb. 488 ; *Rector, etc.*, v. *Mayor, etc.*, 10 How. Pr. 138 ; *Drake* v. *Shortliff*, 24 Hun, 422 ; *Bailey* v. *Ball*, 50 N. Y. 662 ; *Dewey* v. *Bd. of Suprs.*, 2 Hun, 392; *G. Bank* v. *Bd. of Suprs.*, 53 Barb. 223.) The objections filed against the confirmation of the assessment-roll were brought before the common council in the manner required by section 14 of title 6 of the defendant's charter. (*Murphy* v. *City of Buffalo*, 22 Wkly. Dig. 284.) The plaintiff failed to show that either he or his assignors filed any objections to the roll and they cannot in any event claim any benefit or advantage from the neglect of the common council

to pursue the statutory steps with respect to the rights secured to others by the filing of objections when such others for ought that appears may have waived the objections by paying their assessments. (*In re Conners*, 47 Hun, 303, 304, 306; *In re Delancey*, 52 N. Y. 80; *Wilkes* v. *Mayor*, 79 id. 621; *Moore* v. *City of Albany*, 98 id. 409; *Chilcott* v. *City of Buffalo*, 7 id. 638; Cooley on Tax. [2d ed.] 808.) The plaintiff utterly failed to prove the allegations of his complaint, that the assessments were paid under a mistake of the facts which caused the invalidity. These allegations were necessary in order to sustain the complaint, and proof of the facts was essential to recovery. (*Strusburgh* v. *Mayor, etc.*, 87 N. Y. 452; *Delano* v. *Mayor, etc.*, 32 Hun, 144.) The payments not having been made under protest cannot be recovered back. (Desty on Tax. 797.) The special act of the legislature authorizing the work and assessment in question is not unconstitutional. (*Tifft* v. *City of Buffalo*, 82 N. Y. 204; *Ensign* v. *Barse*, 107 id. 329; *Stebbins* v. *Kay*, 51 Hun, 589; *In re Lamh*, Id. 633; *People ex rel.* v. *Lohnas*, 54 id. 604; *In re Sackett St.*, 74 N. Y. 95; *In re Zbourowloski*, 68 id. 88; *People* v. *McDonald*, 69 id. 362; *Williams* v. *Town, etc.*, 66 id. 129.) If the special act is unconstitutional, then the assessment was absolutely void and was no cloud upon the plaintiff's title. (*Wells* v. *City of Buffalo*, 80 N. Y. 253.) The question as to the sufficiency of the denials contained in our answer cannot be raised for the first time upon appeal when the record shows that all the questions were litigated, and the case was tried upon the theory that the denials were sufficient. (*Baldwin* v. *N. Y. C. & H. R. R. R. Co.*, 18 N. Y. S. R. 598; *Penny* v. *Hubener*, Id. 662; 26 id. 422.) The mere fact that the first publication of the assessors' notice of the making of this roll was upon the same day and a few hours prior to the time the mayor signed the resolution, ordering the work and ordering the assessment, did not invalidate the assessment-roll. (*Lyth* v. *City of Buffalo*, 48 Hun, 180; *People* v. *Mayor*, 4 id. 421–442.) The defendant duly excepted to the finding of the court, wherein it is found that the

work was not ordered upon a vote of two-thirds of the members elected to the common council. The same is without any evidence to sustain it. (*Tingué* v. *Vil. of Port Chester*, 101 N. Y. 294.) The amended return made pursuant to the order of the Special Term was warranted, and the only question that can arise thereon is as to whether the case, as presented by the amended return is the same as that passed upon by the lower court. (*Peterson* v. *Swan*, 30 N. Y. S. R. 208, 1013 ; 2 Rumsey's Pr. 396 ; *Hallgartan* v. *Eckert*, 1 Hun, 117 ; 3 id. 219.)

*Roberts & Meads* for respondent. The denial is clearly within the case of *Dillon* v. *Clark* (97 N. Y. 370). Facts and not conclusions of law, nor the evidence of fact, are to be pleaded. (*Church* v. *Gilman*, 15 Wend. 655 ; *Pattison* v. *Adams*, 7 Hill, 126 ; *Scofield* v. *Whitelegge*, 49 N. Y. 259 ; *Sheridan* v. *Jackson*, 72 id. 170 ; *Tooker* v. *Arnoux*, 76 id. 398 ; 1 Chitty on Pl. 566.) The fourth defence is in substance that the right to set aside the roll is barred, because no action for that purpose was commenced, within one year. There is no such limitation to the action. (*Diefenthaler* v. *Mayor, etc.*, 111 N. Y. 331.) By section 7, title 3, chapter 519 of the Laws of 1870, it was a prerequisite to beginning this action that a petition should be presented to the defendant's council forty days before. (Code Civ. Pro. § 406.) The assessment was made under chapter 157 of the Laws of 1875. By sections 1 and 2 of that act, the whole work could be done without the preliminary steps ; by section 3, a designated part of it might be done upon a two-thirds vote of the common council, and no power is given therein to waive the preliminary steps. It would certainly be a violent implication, which would hold that for the part work preliminary steps might be omitted. The rule is well settled that such statutes are to be strictly construed. (*Newell* v. *Wheeler*, 48 N. Y. 487, 490 ; *Merritt* v. *Vil. of Portchester*, 71 id. 309 ; *Granger* v. *Buffalo*, 6 Abb. [N. C.] 238 ; *Peyser* v. *Mayor*, 70 N. Y. 497 ; *Stuart* v. *Palmer*, 74 id. 183 ; *In re Carlton Street*, 78 id.

362.) Where notice is required by law it must be fully given. (*Stuart* v. *Palmer*, 71 N. Y. 183 ; *Merritt* v. *Vil. of Port-chester*, Id. 309.) Where an assessment is void on the ground that the assessors had no jurisdiction to impose the same, an action may be maintained to recover back the money paid in satisfaction thereof, without first having the assessment set aside. (*Newman* v. *Bd. of Suprs.*, 45 N. Y. 676 ; *Strusburgh* v. *Mayor*, etc., 87 id. 452 ; *Horn* v. *Town of New Lots*, 83 id. 100 ; *Bruecher* v. *Vil. of Port Chester*, 101 id. 240.) This assessment was presumptively regular and valid under section 36 of title 7 of defendant's charter. (*Stuart* v. *Crysler*, 100 N. Y. 384.) The assessment being a lien on the property of the persons named in the complaint, the payment of such assessments was warranted and justified, and was not voluntary. (Cooley on Tax. 569 ; *Peyser* v. *Mayor*, etc., 70 N. Y. 497.)

BRADLEY, J. The action was brought to recover moneys paid by the plaintiff and others, whose claims were assigned to him, upon an assessment made upon their lands by the defendant, and to vacate such assessment for the alleged reason that it was illegally made, and was invalid. In June, 1874, proceedings were taken to grade and pave Forest avenue, between the easterly line of Niagara street and the westerly line of Delaware street, in the city of Buffalo. The petition, by which they were instituted, was referred to the assessors, who returned it to the common council with a certificate that the petition was signed by a majority of the persons residing in the city whose lands were liable to be assessed to defray the expense of the improvement. Thereupon, the common council, by resolution, ordered the work to be done ; and the engineer advertised for sealed proposals to do it. He afterward reported to the common council the proposals received by him, one of which was that of Isaac Holloway for $79,000, and they, by resolution, directed that, when the assessment was confirmed, the engineer enter into contract with Holloway at his bid to do the work ; and that the assessors proceed to make the assess-

ment. Immediately after the adoption of such resolution, and before the assessment-roll was made and confirmed, Holloway entered upon performance of the work and proceeded with it until restrained by injunction in an action brought by certain parties for that purpose. The proceedings resulting in the direction to enter into the contract with Holloway were void for non-compliance with the provisions of the statute. It is unnecessary to mention the particulars in which they were so. Afterward, and on April 24, 1875, an act was passed by which the common council were authorized to grade and pave Forest avenue from the easterly paved line of Niagara street to the westerly line of Delaware street in accordance with the plans and specifications deposited in the office of the engineer of the city " in the proceedings to grade and pave the same in the year eighteen hundred and seventy-four, and to assess the expenses of such improvement upon the parcels of land to be benefited thereby; such assessment to be made in the manner provided by law for the making of local assessments for improvements of like character in said city. No preliminary proceedings need be taken before the ordering of such grading and paving by said common council, and the same may be ordered as one work and upon a vote of two-thirds of the members elected to said common council.

" § 2. Upon the assessment for such improvement being confirmed, the city of Buffalo may enter into a contract in writing for such grading and paving with Isaac Holloway, in accordance with such plans and specifications, and at his bid for doing said work, and all work heretofore done by him for the grading and paving of said Forest avenue, shall be taken and deemed to have been done under such contract.

" § 3. The common council may, in its discretion, by a like vote, order such grading and paving only from the easterly line of Niagara street to Lincoln parkway. In such case, equitable compensation shall be made to said Holloway for the work already done between Lincoln parkway and Delaware street and in like manner assessed upon the property benefited thereby." (Laws of 1875, ch. 151.)

Following the passage of that act, and on May 24, 1875, the common council, by resolution, ordered that Forest avenue, from the easterly paved line of Niagara street to the westerly line of Lincoln parkway, be graded and paved in accordance with such plans and specifications; and determined that the expense of it was $64,111, and directed the city assessors to make an assessment of that sum upon the real estate in the city benefited by the improvement. The assessment-roll was made accordingly, and filed with the city clerk, and the notice required by the statute published. (L. 1870, ch. 519, tit. 6, §§ 10,. 12.) And it appears by the minutes of the proceedings of the common council, that on July 7, 1875, "the city clerk reported that objections had been filed to the confirmation of the following assessment-roll, the same having remained on file in his office ten days since the first publication of notice in the official paper, that the same was so on file and that objections might be filed with him to the confirmation thereof, viz. : No. 4012, for grading and paving Forest avenue from the easterly paved line of Niagara street to the westerly line of Lincoln parkway, $64,111." Then, as it there appears, a motion by an alderman was made and carried that interested parties be heard. No one appearing, the roll was, on motion, confirmed; and the report of the committee on streets was made and adopted "that the city engineer be and he is hereby directed to contract with Isaac Holloway for grading and paving Forest avenue from the easterly paved line of Niagara street to the westerly line of Lincoln parkway for the sum of $64,111." These proceedings of the common council are particularly referred to, because questions are raised upon them.

The trial court found that the payments in question were made under a mistake of facts and under fear of the parties making them that their lands would be sold unless the payments were made; and that they would lose their lands; and directed judgment for the plaintiff. The proceedings were taken under the act of 1875, which was effectual for their support, so far as its provisions authorizing them, were pursued. (*Spencer* v. *Merchant*, 100 N. Y. 585.) It is contended, on

the part of the plaintiff, that the provisions of the first section of the act, that no preliminary proceedings need be taken before ordering the work, has no application to the third section, which provided for ordering it upon a less and specific portion of Forest avenue, for doing which the assessment in question was made. But it is quite evident that the legislative intent was to give the same facility to the action of the common council in ordering the work on that as on the greater portion mentioned in the first section, and such is its fair construction. Any other view would render the provision of the third section substantially nugatory. The apparent purpose of this statute was to relieve, as far as practicable, the city and the contractor from the embarrassment in which they were placed by the invalidity of the proceedings of 1874, and to give the latter the benefit of the work he had performed, and to enable the city to include the requisite sum to pay it in the assessment to be made, as effectually as if the prior proceedings had been valid.

The only thing essential to the ordering of the work was a vote to that effect of two-thirds of the members elected to the common council. The trial court found that it was not ordered by such a vote. In the case as originally printed, the vote on that resolution was represented as "ayes, 21; noes, 10." It appeared by the charter that there could be and were no more than twenty-six aldermen or members of the common council. (L. 1870, ch. 519, tit. 2, § 3.) The statement as so printed evidently was, for some reason and in some respect, a mistake. It represents the essential number of affirmative votes, but if there were ten in the negative, there could not have been two-thirds in support of the resolution. The case, however, is amended by maunscript insertion of the votes of twenty-one in the affirmative, giving the names of the members so voting, and striking out "ten" and inserting "none." This apparently makes the vote appear regular, and sufficient to give effect to the resolution. And there would be no occasion for further remark on the subject if no question were made upon it by the plaintiff's counsel. They do urge the point that a

two-thirds vote does not appear, because, there being only twenty-six members, the representation of thirty-one votes with twenty-one in the affirmative and ten in the negative furnishes no proof of the requisite vote. It appears, by an order of the Superior Court made since the appeal to this court, that, on the trial, the resolution was taken from erroneously printed proceedings of the common council, and that such proceedings so printed were used in making the case; that, as it appeared in the original journal of the common council, the resolution was adopted by the vote of twenty-one members there named, without any votes in the negative; and it was ordered that the case and return be amended accordingly, and that such amendment be certified to the clerk or this court. This order certified is annexed to the record in this court. This may account for the finding of the trial court made as before mentioned. The amendment, so far as it changes the evidence as presented by the record, cannot have consideration here, as this court can only review the determination of the court below. By the same order another amendment of the case and return was directed to supply an omission in another resolution of the common council, in the same manner erroneously represented at the trial. But the view taken of the case renders those matters of no essential importance for the purpose of its determination. The conclusion of the court was that the assessment-roll and the assessments therein upon confirmation were presumptive evidence that the roll was regular and valid, and that all the provisions of the charter had been complied with; that the assessments were apparent liens upon the lands; and that unless paid, the lands would be sold and certificates issued, which would also be presumptive evidence of the regularity of the sale. The provisions of the charter were that it should be presumed that every tax levied and assessment made under it was valid and regular, and that all the proceedings by law required were taken and had, unless the contrary appeared (Id. tit. 7, § 36); that an assessment should be a lien upon the land for five years from the time of the delivery of the roll to the

treasurer (Id. § 1); that the collection of any assessment returned by the collector as unpaid may be enforced by sale of the land to be made while the assessment is a lien (Id. § 4); and that a certificate of sale shall be evidence of the facts therein stated (Id. § 12)   It may be observed that the common council were required to keep a journal of its proceedings (Id. tit. 2, § 48; tit. 3, § 2), and by that means is preserved a record of them.   Assuming, therefore, that the assessment was invalid by reason of defects in the proceedings of the common council on which it was based, the question arises whether the payment by the plaintiff and his assignors of the assessments on their lands was made under a mistake of law or of fact.   There was no coercion of those parties to make payment and no duress of property, unless it was produced by the assessment.   Payment under a mistake of law would not, but under a mistake of fact would, enable the plaintiff to recover in case the assessment was invalid for want of jurisdiction to make it.   This question was in *Phelps* v. *Mayor, etc., of New York* (112 N. Y. 216).   There the contract to perform the work was made pursuant to a resolution or ordinance of the board of aldermen rendering it unnecessary to publicly advertise for bids as required by the statute, and vesting an unauthorized discretion in the commissioner of public works as to the manner of doing the work.   The action was brought to recover back the amount paid by the plaintiff upon an assessment made on his property.   This resolution, pursuant to which the assessment was made, was void and the assessment invalid.   The court held that there was no mistake of fact to support the action; that it was a mistake of law merely, because by reference to the resolution, it would be seen that the assessment was not authorized or supported by it.   In the present case as in that, the alleged irregularity or defect in the proceedings, so far as it was in the insufficiency of the resolutions of the common council or in the recorded vote by which they were adopted, appeared upon their face, and thus they furnished notice of their legal infirmity.   The application of the doctrine of that case to the present one,

seems to require the conclusion that the defective resolutions of the common council in the proceedings upon which the assessments in question were founded, do not alone afford the plaintiff the right to maintain the action. The rule is otherwise when the facts, which render an assessment, apparently a lien upon land, invalid for want of jurisdiction to make it, are *de hors* the record. Then the person paying his assessment will be deemed to have done so involuntarily, and may recover back the amount paid without first vacating the assessment. (*Diefenthaler* v. *Mayor, etc.,* 111 N. Y. 331; *Strusburgh* v. *Mayor, etc.,* 87 id. 452.) The proposition upon which the right to recover depends, is not so limited when the payment is produced by coercion of law or unlawful exaction under process for the collection, valid on its face, of a void assessment. Then, the assessment being void, the payment so made is not voluntary and may be recovered back. (*Peyser* v. *Mayor, etc.,* 70 N. Y. 497; *Bruecher* v. *Village of Port Chester,* 101 N. Y. 240.)

Inasmuch as the record was pursuant to statute, kept of the proceedings of the common council, the presumption before mentioned applicable to the assessment-roll and certificate of sale, does not seem essentially important for the purposes of the question now under consideration. The charter of the city of New York, upon which arose the *Phelps* case, provided that leases given pursuant to a sale in execution of assessments, should "be presumptive evidence that the sale and all proceedings prior thereto from and including the assessments \* \* \* were regular and according to the provisions of the statute." (Laws 1882, ch. 410, § 941.)

These views render it unnecessary to consider the question whether, from what appears in the record of the common council as before mentioned in that respect, it must be assumed that the objections filed with the city clerk to the assessment, were not brought before the council, and to its attention as required by the statute, which provides that the city clerk "shall at the first regular meeting of the common council after the expiration of the time for filing of objec-

tions, lay such roll and the objections filed thereto before the common council, who shall on that or such other day or days as it shall appoint, hear the objections and confirm the roll or annul it, or refer it back to the assessors to make a new assessment." (L. 1870, ch. 519, tit. 6, § 14.) Nor is it necessary to consider the effect, as bearing upon the validity of the assessment, of the entry so made, since the alleged omission appeared upon the face of the record of the proceedings of that body. To enable persons interested to file such objections, the city clerk, when the assessment-roll is delivered to him, is required to publish a notice in five successive numbers of the official paper that the roll is in his office, and that objections may be filed with him within ten days from the first publication of the notice. (Id. § 12.) This notice was published in five successive numbers of such paper, from June seventh to eleventh, both inclusive. It is urged that this was not a sufficient notice within the statute, because the resolution of May 24, 1875, ordering the assessment was approved by the mayor on June seventh, not earlier than nine o'clock in the forenoon, and the official paper went to press as early as six o'clock. The fact that the paper was thus issued earlier in the day than the resolution became effectual by the executive approval, did not have the effect to render the publication of the notice on that day a nullity. The general rule is that fractions of a day will not be regarded in law, except for the purpose of preventing injustice. (*Small* v. *M'Chesney*, 3 Cow. 19; *Blydenburgh* v. *Cotheal*, 4 N. Y. 418.) There is nothing to defeat the application of that rule to the question in the present case.

There is no question relating to the issues as presented by the pleading requiring any consideration.

If these views are correct, the payments were made voluntarily, and not under a mistake of facts, but of law merely.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.