# WILLIAM W. CROCO, Respondent v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

Amount of Damages for the Jury — General and Special Damages—Pleading—Proof—Champertous Contract—Validity—Pleading.

1. *Damages Alleged Excessive—Conflicting Evidence—Verdict Not Reviewable.*

> The amount of damages is a fact to be found by the jury, and if there be any evidence to support the verdict, the court is not at liberty, under the constitution of this State, to set it aside.

2. *General and Special Damages—Pleading—Proof.*

The general rule in tort is that the plaintiff is entitled to recover damages for all injuries which are the natural and proximate consequences of, or can be traced to, the injury complained of; such are termed general damages, and may be proved under the general allegation of damage in the complaint. Special damages are those which are not the probable and natural result of the injury, and must be specially pleaded. A plaintiff is not required to aver all the physical injuries which he sustained or which might have resulted from or be aggravated by the wrongful act of defendant.

3. *Champertous Contracts — Validity under Statute — Collateral Attack.*

The common law has always been in force in Utah, but the rule as to champertous contracts was modified by the provisions of Sec. 3683, C. L. U. 1888 which provided that "The measure and mode of compensation of attorneys and counsellors at law is left to the agreement, express or implied, of the parties." Under this statute it was competent for attorney and client to agree that the attorney's compensation should be contingent upon success, and payable by percentage or otherwise out of the proceeds of the litigation. It was not competent for the attorney, in consideration thereof, to agree to pay the fees and costs of suit thereafter to be commenced, but one who was not a party to such contract has no right to question its validity.

4. *Champertous Contract—Such Defense Must be Pleaded.*

When the defense of champertous contract is called upon, it must be pleaded.

(Decided November 11, 1898.)

Appeal from the District Court, Weber County, Hon. H. H. Rolapp, *Judge.*

Action by plaintiff against defendant to recover damages for personal injuries. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Parley L. Williams, Esq.,* for appellant.

Under an allegation of "other wrongs" the plaintiff was not entitled to introduce evidence of injuries other than those sufficiently described in the complaint, to enable the defendant to know the particular matters he was required to meet. That is the very reason of the rule requiring the proof to correspond with the allegations. *Batterson* v. *Chicago & Grand Trunk Ry. Co.,* 8 A. & E. Railroad cases, 125; *Marquette H. & O. Ry. Co.* v. *Marcott,* 41 Mich., 433; *Flint* v. *Pere Marquette Ry. Co.,* 38 Mich., 714; *McAbsher* v. *Richmond & D. R. Co.,* 12 S. E., 892; *Mobile & O. R. R. Co.* v. *George,* 10 S., 145; *Linton* v. *Unexcelled Fire Works Co.,* 124 N. Y., 533.

That the court erred in refusing to instruct the jury as requested by the defendant involves the question of champerty and whether or not the law against champerty exists in this state.

Our contention is that the common law prevails in Utah and has existed here ever since the Territory of Utah was organized. That at common law champerty was a crime and punishable as such and all contracts tainted with it were void.

That the common law prevails in Utah and did in the days of our territorial existence is shown by the decisions of the Supreme Court of the Territory as well as by the decisions of the Federal Supreme Court. *People* v. *Green,* 1 Utah, 13; *National Bank* v. *Kinner,* 1 Utah, 100; *Thomas* v. *U. P. Ry. Co.,* 1 Utah, 232; *Mormon Church* v. *United States,* 136 U. S., 62; *American Publishing Co.* v. *Fisher,* 166 U. S., 464.

By the common law champerty was a crime. It is so declared by Blackstone and earlier authorities and is defined by that author as follows:

"Champerty is a species of maintenance and punished in the same manner, being a bargain with the plaintiff or defendant *campum partire* to divide the land, or other matters sued for, between them, if they prevail at law; whereupon the champerter is to carry on the party's suit at his own expense." 4 Blackstone's Comm., 135.

Champertous contracts are void both by law and equity. *Barrien* v. *McLane*, 1 Hoffman Ch., 421; 4 Kent's Comm., p. 4—note (b) and cases cited; *Backus* v. *Byron*, 4 Mich., 535.

In Illinois champerty is recognized as a part of the common law, and contracts between attorney and client whereby the attorney is to institute and prosecute suits at his own expense for the recovery of property belonging to or claimed by the client, for which his own compensation is to be a part of the property recovered, however honestly entered into and carried out, is champertous and void. *Thompson* v. *Reynolds*, 73 Ills. 11; *Holman v. Billings*, 89 Ills., 183; *North Chicago St. R. R. Co.* v. *Ackley*, 171 Ills., 100.

The same doctrine prevails in Indiana, Massachusetts, Ohio, Kentucky and Missouri. *Lafferty* v. *Jelly*, 22 Ind., 471; *Lothrop* v. *Amherst Bank*, 9 Met., 489; *Weakly* v. *Hall*, 13 Ohio, 167; *Brown* v. *Beauchamp*, 5 B. T. Monroe, 413; *Duke* v. *Harper*, 66 Mo., 51.

*David Evans, Esq., L. R. Rogers, Esq.*, and *A. G. Horn, Esq.*, for respondent.

It appears that the only contention which counsel makes with respect to the question of excessive damages, is that the *weight* of evidence does not show that plaintiff was damaged as much as that found by the jury.

In the case of *Nelson* v. *Southern Pacific*, 15 Utah, 328, it is held that under Sec. 9, Art. 8 of the Constitu-

tion, this court on appeal has no power to review the facts in a case at law except so far as may be necessary to determine questions of law.  See also *Walley* v. *Deseret National Bank*, 14 Utah, 313; *Watson* v. *Mayberry*, 15 Utah, 275.  See also *Harrington* v. *Eureka Hill Mining Company*, 53 Pac. 737; *Mangun* v. *Mining Company*, 15 Utah, 537.

In the absence of any statute to the contrary, or the adoption of the common law by the legislature, the following incontrovertible propositions are supported by all authorities: First, the contract is not champertous. Second, a champertous contract can never be questioned except as between the parties to the contract.  Third, in all cases, champerty must be pleaded.  Sec. 3683 C. L. Utah, 1888, p. 378; *Hoffman* v. *Vallejo*, 45 Cal., 564; *Barnes* v. *Scott*, 117 U. S., 582; *Euneau* v. *Rieger*, 105 Mo., 682; *Brimback* v. *Oldham*, 1 Ida., 710; *Vimont* v. *R. R. Co.*, 69 Ia., 304; *Elborough* v. *Ayres*, L. R., 10 Eq. Cas., 367; *Whithey* v. *Kirtland*, 27 N. J. Eq., 333; *Davis* v. *Settle*, 26 S. E., 557.

In the case at bar there was no plea of champerty offered upon the part of the defendant.  The rule is well settled that even in a proper case where such contracts are questioned between the parties who make them, a plea. upon the part of the defendant is indispensable.  *Moore* v. *Ringo*, 82 Mo., 468; *Pike* v. *Martindale*, 91 Mo., 268; *Braumback* v. *Oldham*, 1 Ida., 710; *Allison* v. *Chicago, etc. R. Co.*, 42 Iowa, 275; *Vimont* v. *Chicago, etc. R. Co.*, 69 Iowa, 304; *McMullen* v. *Guest*, 6 Tex., 275.

MINER, J.

This action was brought against the railroad company to recover damages for an injury to plaintiff's person re-

ceived on April 3, 1897, at Malad bridge, in Idaho, at which time the train on which plaintiff was a passenger was derailed. The plaintiff alleges that the accident was occasioned because defendant negligently maintained an inadequate switch, side track, and road bed, and negligently and carelessly ran its train at a great and dangerous rate of speed, by reason of which the train was thrown from the track, and plaintiff became greatly and permanently injured. Upon a trial the jury found a verdict of $5,000 in favor of the plaintiff. This appeal is from the judgment and order over-ruling defendant's motion for a new trial.

1st, The appellant contends that the damages assessed are excessive, against the clear weight of the evidence, and so manifestly wrong as to show the amount of the verdict was unjust and influenced by prejudice and passion. Upon an examination of the testimony we find that there was evidence upon which the jury could find a verdict for the plaintiff, although conflicting as to the nature of plaintiff's injuries. In such case it has been invariably held by this court that the amount of the damages is a fact to be found by the jury from all the evidence in the case, and if there be any evidence to support the findings or verdict, this court is not at liberty, under the constitution of this state, to review alleged errors in avoiding it. In such case the court will consider the evidence only so far as may be necessary to determine the question of law. *Nelson* v. *So. Pac. Co.*, 15 Utah, 328; *Walley* v. *Des. Nat. Bank*, 14 Utah, 313; *Watson* v. *Mayberry*, 15 Utah, 275; *Harrington* v. *Eureka Hill Min. Co.*, 58 Pac. R. 757, 17 Utah (—;) *Mangum* v. *Bullion Beck Min. Co.*, 15 Utah, 536; *Anderson* v. *Min. Co.*, 15 Utah, 23; *State* v. *Halford*, decided at Sept. Term, 1898, 17 U. (—;) *Reese* v. *Morgan Silver Min. Co.*, decided at Sept. Term, 1898, 17 Utah (— .)

2d, The plaintiff, under objection and exception, was permitted to testify on re-direct examination, that his memory was poorer than it was before the injury, and under like objection that the testimony was not within the allegations of the complaint, the plaintiff was permitted to testify that there was a difference in his eyesight after his relapse, and that he could not see out of his right eye.

The witness had made contradictory statements concerning several matters of injury indicating an absence of correct recollection, and counsel for the plaintiff contends that the question as to memory was asked for the purpose of explaining apparent contradictions in his testimony, and that the testimony concerning plaintiff's eyesight after his discharge from the hospital was offered for the purpose of basing a hypothetical question to medical experts who afterwards testified in the case, the contention being that the relapse was a partial stroke of paralysis on the right side, caused by an injured spine, and not an epileptic fit, as contended for by the appellant.

It does not appear that any demurrer had been interposed to the complaint for uncertainty, or otherwise. In its charge to the jury the court limited the damages to the allegations of the injuries set forth in the complaint, and no reference was made to the loss of eyesight or memory.

We think the testimony was competent under the claim of counsel, and also under the complaint filed. The result of the injury charged in the complaint, and traceable to the wrongful act was that the plaintiff became greatly and permanently injured, cut and disfigured in and on his back, head and arms, and that he received injuries in other parts of his body, and was internally injured in the region of his back and abdomen; and that by reason of such injuries so received, plaintiff became sick, sore, and

disordered and crippled for life, from which injuries he suffered great mental distress, and was unable to follow his usual avocation.

Judge Sutherland in his work on damages, 3 Suth. on Damages, (2d. ed.) 2261-2, says:

"The general rule in tort is that the party who commits a trespass or other wrongful act is liable for all the direct injury resulting, although such injury could not have been contemplated as the probable result of the act done. The plaintiff may show specific direct effects of the injury without specifically alleging them; as that he was thereby made subject to fits. If they were a part of the result of the injury, the plaintiff may recover for such damage without specially alleging it, as well as the pain and disability which followed. The obviously probable effects of the injury may be given in evidence though not laid in the declaration. Thus, where one of the direct consequences of a wound was the loss of the power to have offspring, evidence of that fact was admissible, though the declaration did not specifically designate that consequence."

In *Johnson* v. *McKee*, 27 Mich. 471, the court said:

"The battery consisted in striking McKee with a chair whereby certain injuries were inflicted on his face and head, and in consequence of which he was seriously, and, as is claimed, permanently affected. Among other results, there was evidence that he suffered from urinary difficulties, caused or aggravated by the blow. It was claimed this injury was not within the terms of the declaration, and could not be shown without express averment. If the evidence showed any such resulting injury, it showed it to have been as closely connected with the blow as any of the other evil consequences. It was a sickness produced by it in the same way as the swelling and sore-

ness in the head and eyes, and the other grievances about which no question was made on the trial. The declaration charges sickness and pain to have been among the suffering caused by means of the assault, and we do not think the rules of pleading require any more specific description than was given. We need not inquire how far it was requisite to go in declaring for consequences not necessarily following such an injury, because these consequences are very clearly set forth. When the defendant was informed that damages were sought for sickness and disorder, and their attendant expenses, as well as for wounds and bruises, he was bound to expect evidence of any sickness the origin or aggravation of which could be traced to the act complained of."

This seems to be the better and well settled doctrine, although there are cases to the contrary. *Manley* v. *Delaware Canal Co.*, 37 At. Rep., 279; *Keyser* v. *Railroad Company*, 66 Mich., 400; *Montgomery* v. *Lansing*, 61 N. W. R., 543; *Welsh* v. *Ware*, 32 Mich., 76; *Tyson* v. *Booth*, 100 Mass. 258; *Snyder* v. *City of Albion*, 71 N. W. R., 475; *Montgomery* v. *Railroad Co.*, 103 Mich., 46; *Railroad Company* v. *Hecht*, 115 Ind., 443; *Ehrgott* v. *Mayor*, 96 N. Y., 264; *Railroad Company* v. *Harris*, 122 N. Y., 597; *City of Chicago* v. *Maclean*, 133 Ill., 148.

The plaintiff is always entitled to recover all damages which are the natural and proximate consequence of, and are traceable to the act complained of and those damages which are probable, traceable to, and necessarily result from the injury are termed general, and may be shown under the general allegation of the complaint. Only those damages, which are not the probable and necessary result of the injury are termed special, and are required to be stated specially in the complaint. The plaintiff was

not required to aver all the physical injuries which he sustained, or which might have resulted from or be aggravated by the wrongful act complained of. If such injuries can be traced to the act complained of, and are such as would naturally follow from the injury, they need not be specially averred. *Chicago* v. *McLean*, 133 Ill., 148; *Montgomery* v. *Lansing*, supra.

When the defendant was informed of the injury to plaintiff's head and back, and that he was greatly and permanently injured in his body, and internally injured in his back and abdomen, by reason of which plaintiff became sick, sore, disordered, and crippled for life, from which injuries he suffered great mental distress and physical pain, he was bound to expect evidence of any sickness or injury to plaintiff of memory or eyesight, the origin or aggravation of which could be traced to the negligent act complained of. This rule does not in any sense overturn the well established one that where damages are special they must be specially averred in the complaint.

3rd, It is contended that the court erred in refusing to instruct the jury, as requested by the defendant as follows:

"The court instructs you that in this case the plaintiff has entered·into a contract with his attorneys whereby he agrees to give them forty per cent of whatever sum may be recovered herein, and the said attorneys agree, for said consideration, not only to render their services as attorneys herein to the plaintiff, but in addition thereto to pay the costs required to be advanced to the clerk, the sheriff for serving summons, and whatever may be necessary to pay the fare of witnesses from Idaho to the place of trial. This constitutes an unlawful maintaining of plaintiff's case, and is contrary to law, and the said contract reaches to and effects the entire interest of the plaintiff in the

case; and, in consequence of said unlawful agreement, the said plaintiff is not entitled to recover in this action, and you are therefore instructed to return a verdict for the defendant."

Defendant contends that the alleged contract, claimed to be champertous, was entered into between the plaintiff and his counsel, May 15, 1897. At this time Section 3683 C. L. U. 1888, was in force. This section provides: "The measure and mode of compensation of attorneys and counsellors at law, is left to the agreement, express or implied, of the parties." Under this statute the mode and manner of compensation was expressly left to the agreement, express or implied, between counsel and client, and no legal restrictions were placed upon their agreement or compensation, at the time their contract was made. Although the common law was in force in this state at the time of the adoption of our constitution, so far as compatible with our situation and government, as held in *Deseret Irr. Co.* v. *McIntyre,* 52 Pac. Rep. 628, 17 Utah ——; *People* v. *Green,* 1 Utah, 11; *Thomas* v. *Railroad Co.,* 1 Utah, 232; *Mormon Church* v. *U. S.,* 136 U. S., 62; *American Pub. Co.* v. *Fisher,* 166 U. S., 464; Sec. 2488 Rev. Stat., still it is believed that its force as applied to champertous contracts was modified by the passage of Section 3683, above quoted.

Sec. 135 Rev. Stat. 1898, was not in force when this contract was made. Under Sec. 3683, it was competent for an attorney and client to agree upon the attorney's compensation, and such compensation may be made contingent upon success, and payable by percentage or otherwise, out of the proceeds of the litigation. But, it was not competent for the attorney in consideration thereof, to agree to pay the advance fees and costs of suit thereafter to be commenced. *Fowler* v. *Callan,* 102 N. Y. 395.

"The English common law and statutes against maintenance and champerty had their origin, if not their necessity, in a different state of society from that which prevails at the present time. When the doctrine was established, lords and other large landholders were accustomed to buy up contested claims against each other, or against commoners with whom they were at variance, in order to harass and oppose those in possession. On the other hand, commoners, by way of self-defense, thinking that they had title to lands, would convey part of their interest to some powerful lord, in order, through his influence, to secure their pretended right. The want of sufficient written conveyances, and records of titles, and the feudal relation of villain and liege lord, afforded facilities for the combinations and oppressions which followed this state of things. The power of the nobles became mighty in corrupting the fountains of justice. To remedy these evils, the law against both maintenance and champerty was introduced."

It is held in *Courtright* v. *Burns*, 3 McCrary, 60, that the tendency in the courts of the United States is strongly in the direction of relaxing the stringency of the doctrine of the common law concerning champerty and maintenance, so as to permit greater liberty of contracting between attorney and client than was formerly allowed, and this for the reason that the peculiar condition of society which gave rise to the doctrine has in a great measure passed away. In some of the states the common law doctrine is altogether repudiated, and it is held that no such contract is now invalid, unless it contravenes some existing statute of the State. *Sedgwick* v. *Stanton*, 14 N. Y. 289; *Voorhees* v. *Darr*, 51 Barb. 580; *Richardson* v. *Roland*, 40 Conn. 578; *Mathewson* v. *Fitch*, 22 Cal. 86; *Hoffman* v. *Valejo*, 45 Cal. 564; *Lytle* v. *State*, 17 Conn. 609.

4th. If it be conceded that the common law, as modified, was in force at the time the contract was made, and that it was of a champertous character, and therefore void, yet it appears that the contract was entered into between the plaintiff and his attorney, and that the defendant was in no way a party thereto. The defendant being a stranger to the contract, had no right to question its validity in a collateral attack. There seems to be no sound reason in a rule which would allow a party to defeat a just cause of action because the opposite party has made a contract which is absolutely void, and which therefore cannot be enforced by either of the contracting parties. As to the defendant the rights of the parties are the same as if the illegal contract had never been executed. The champertous contract being void would divest the plaintiff of no cause of action. He is still the real party in interest. While the parties to the illegal contract might be allowed to repudiate it, other persons not parties to it, should not be permitted to exonerate themselves from their just obligations on account of it. If, for instance, a defendant when sued upon his valid promissory note can avoid payment thereof, and interpose a bar to a recovery, by showing that the plaintiff made a champertous contract with his attorney for its collection, then is a meritorious plaintiff placed, to a large extent, at the mercy of a dishonest debtor. Under such circumstances it does not lie in the mouth of the defendant to set up that fact for the purpose of escaping the payment of an honest debt or avoiding a just liability. The law in such a case will compel the defendant to perform his undertaking, and leave the question of champerty to be determined between the plaintiff and his attorney.

We are of the opinion that the defendant is not in a position to avoid a legal obligation because the plaintiff

and his attorney may have entered into a champertous contract to enforce the obligation. *Small* v. *Railroad Co.*, 8 N. W. R. 437; *Hoffman* v. *Vallejo*, 45 Cal. 564; *Barnes* v. *Scott*, 117 U. S. 582; *Duke* v. *Harper*, 66 Mo. 51; *Thalheimer* v. *Brinkerhoff*, 3 Cow. 623; *Boone* v. *Chiles*, 10 Pet. 177; *Hilton* v. *Woods*, L. R. 4 Equity, 432; *Elborough* v. *Ayres*, L. R. 10 Equity, 367; *Allison* v. *C. & N. W. 'Co.*, 42 Iowa, 274; *Pike* v. *Martindale*, 91 N. W. R. 263; *Courtright* v. *Bunnes*, 13 Fed. Rep. 317.

There are cases holding a contrary doctrine, but we believe the above rule to be sustained by the great weight of authority.

We are of the opinion that the court properly refused to give the instruction requested by the defendant.

5th. There is still another reason why the instruction should not have been given to the jury. It appears that the defendant did not set up in its answer the plea of champertous contract. It is a rule well settled, that in proper cases, when such contracts are questioned between the parties who make them, a plea or answer of the fact upon the part of the defendant is necessary in order to make the defense availing.

This rule will apply in this case. *Moore* v. *Ringo*, 82 Mo. 468; *Pike* v. *Martindale, supra.; Brumback* v. *Oldham*, 1 Idaho, 710; *Allison* v. *Railroad Co.*, 42 Iowa, 275; *Vimont* v. *R. R. Co.*, 69 Iowa, 304; *McMullen* v. *Guest*, 6 Texas, 275; *Suit, et al.* v. *Woodhall*, 116 Mass. 547.

Upon the whole record we find no reversible error. The judgment of the district court is affirmed, with costs.

ZANE, C. J. and BARTCH, J., concur.