MOONEY v. DENVER & R. G. W. R. CO.

No. 7373.    Decided, August 7, 1950.    (221 P. 2d 628.)

Rehearing denied November 10, 1950.

308

See 21 C. J. S., Courts, Sec. 90. Dismissal of cause of action before a more convenient forum exists, 87 A. L. R. 1407. See, also, 14 Am. Jur. 372.

*Rawlings, Wallace & Black, Dwight L. King,* all of Salt Lake City, for appellant.

*VanCott, Bagley, Cornwall & McCarthy, Clifford L. Ashton,* all of Salt Lake City, for respondent.

LATIMER, Justice.

Thomas B. Mooney, a resident of Denver, Colorado, commenced an action in the District Court of the Third Judicial District in and for Salt Lake County, State of Utah, to recover for certain personal injuries occasioned to him by the alleged negligent acts and conduct of the defendant, Denver and Rio Grande Western Railroad Company. The accident happened at Tabernash, Colorado, which is located approximately 66 miles west from the city of Denver, Colorado, and approximately 500 miles from the city of Salt Lake, Utah. The defendant, Denver and Rio Grande Western Railroad Company, is a corporation organized and existing under and by virtue of the laws of the State of Delaware and is authorized to transact business in the State of Utah with its principal place of business at Salt Lake City. It is engaged in interstate commerce and maintains

and operates an interstate railway in the states of Utah and Colorado. While a major portion of the business of the defendant carrier may be carried on in the State of Colorado a large and substantial amount is transacted in this state. There are in excess of 298 miles of main line trackage belonging to the defendant in this state and it is one of the two principal east-west continental lines running between Salt Lake City, Utah, and Denver, Colorado.

After the service of summons on defendant's process agent, the defendant company appeared specially and moved to dismiss plaintiff's complaint upon the grounds of forum non conveniens. This motion was supported by an affidavit filed by counsel for defendant corporation. In substance, the affidavit averred that the plaintiff was a resident of the state of Colorado and the defendant a corporation of the state of Delaware; that the witnesses for the defendant, estimated to be ten in number and necessary to the defense of the action, resided in the state of Colorado; that because processes from the courts of this state were ineffective the defendant was unable to compel the attendance of the necessary witnesses at a hearing in Salt Lake City, Utah, without meeting the financial terms and conditions demanded by the witnesses; that of the ten witnesses, three would be physicians and surgeons and that they would not attend without additional compensation and extra expense allowances; that all of the ten witnesses lived within a convenient distance of the courts located in the city of Denver, Colorado; that there are both state and federal courts which have jurisdiction to try the action available in Colorado; that defendant is at a disadvantage in presenting its defense in this state in that it is impossible to have the jury view the premises where the accident took place or to view the defective equipment which allegedly caused the injury to plaintiff; that the trial of the action in the Third Judicial District Court would add to the congestion of the calendar in that district and would delay the

trial of cases involving local residents and local issues of pressing importance; that the trial of this and similar cases between non-residents of Utah is increasing the administrative costs of the local courts and imposing additional burdens upon the citizens of this state, both financial and in the performance of their civic duties as jurors; that the distance between Denver, Colorado, and Salt Lake City, Utah, is 570 miles and that the cost to the defendant to litigate the case in this jurisdiction would amount to approximately $1,500.00.

The motion came on for hearing before *Honorable John A. Hendricks*, Judge of the Second Judicial District, who was called to sit as judge in the Third Judicial District Court. In his findings of fact he found the facts as alleged in the affidavit and the additional facts hereinafter recited. The latter are apparently based upon the trial judge taking judicial notice of the condition of the court calendar in the Third Judicial District. The facts dealing with the state of the court calendar are these: The trial calendar for the month of June, 1949, showed that a total of 165 civil cases were at issue and set for trial; that approximately half of that number could be disposed of during the month of June; that the crowded condition of the calendar necessitated calling in an extra judge to this district; that 29 similar cases involving personal injury suits against three different railroad companies were assigned for trial during the month of June, 1949; and that of that number, 17 were brought by non-residents suing on causes of action arising outside of the state of Utah.

The trial judge sustained the motion to dismiss the action upon the grounds of forum non conveniens, and plaintiff perfected his appeal to this court. We are thus presented with the question as to whether or not a District Court of this state can, because of convenience of court and parties, dismiss an action brought by a non-resident plaintiff

against a foreign corporation on a cause of action arising outside this state.

In view of the fact that this action was brought under the Federal Employers' Liability Act, the venue provisions of Section 6 of that act become important. That section provides as follows:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several states."

As amended June 25, 1948, 45 U. S. C. A. § 56.

The foregoing section sets forth the requirements for venue as prescribed by the Congress of the United States. Similar requirements controlling venue within this state when the cause of action arises without the state are found in Section 104—4—5, U. C. A. 1943. That section is as follows:

"All transitory causes of action arising without this state, except those mentioned in the next succeeding section, shall, if action is brought thereon in this state, be brought and tried in the county where any defendant in such action resides; and if any such defendant is a corporation, any county in which such corporation has an office or place of business shall be deemed the county in which such corporation resides, within the meaning of this section."

In view of the provisions of these two sections, there can be no question raised that the Third District Court in and for Salt Lake County does not have jurisdiction of the cause of action, as the principal place of business of the defendant in this state is located in Salt Lake City, Salt Lake County, State of Utah. Therefore, if the actions of the trial judge in dismissing the action can be sustained the power must be found in the inherent right of a court to dismiss a cause of action over which it has jurisdiction for the reasons that there is a more convenient form.

Before discussing the various cases dealing with the

right or power of a district court of general juriisdiction to dismiss this action upon the grounds stated, we desire to quote relevant constitutional provisions stated, we desire to quote relevant constitutional provisions and statutes of this state dealing with change of venue. We quote from the State Constitution to establish the policy that courts in this state must be open to all persons, and, we quote from the Code to show that within this state the legislature considered that courts should be clothed with discretionary power to transfer causes to other districts within the state for the convenience of witnesses or parties or when the ends of justice would be promoted.

Article I, Section 11, of the Constitution of the State of Utah, provides as follows:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

Section 104—4—9, U. C. A. 1943, insofar as is material, is as follows:

"The court may, on motion, change the place of trial in the following cases: * * *

"(3) When the convenience of witnesses and the ends of justice would be promoted by the change."

We first dispose of appellant's contention that the Congress of the United States has decreed that the courts of this state must assume jurisdiction of Federal Employers' Liability Act cases and afford litigants a trial on the merits regardless of state procedure or practice. We have grave doubts that the Congress of the United States can require the courts of this state to assume jurisdiction and try all cases. However, we need not decide that question for the reason that we have concluded that neither the Federal Employers' Liability Act nor other federal

statutes make it mandatory upon the courts of this state to exercise jurisdiction even though in the first instance the cause of action was properly instituted. We shall refer to pertinent United States Supreme Court decisions in chronological order.

In the case of *Chambers* v. *Baltimore & Ohio R. R. Company*, 207 U. S. 142, 28 S. Ct. 34, 35, 52 L. Ed. 143, decided November 18, 1907, the Supreme Court of the United States, in dealing with a cause of action running to a non-resident, founded upon the death of a locomotive engineer occurring in a foreign jurisdiction, announced the following principles as applicable at that time:

"In the decision of the merits of the case there are some fundamental principles which are of controlling effect. The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the states, but is granted and protected by the Federal Constitution. *Corfield* v. *Coryell*, [6 Fed. Cas. No. 3,230, p. 546] 4 Wash. C. C. 371, 380, per Washington, J.; *Ward* v. *Maryland*, 12 Wall. 418, 430, [79 U. S. 418] 20 L. Ed. [449, 452], per *Clifford*, J.; *Cole* v. *Cunningham*, 133 U. S. 107, 114, [10 S. Ct. 269, 33 L. Ed. 538 [542], ], per Fuller, C. J.; *Blake* v. *McClung*, 172 U. S. 239, 252, 19 S. Ct. 165, 43 L. Ed 432, [437], per Harlan, J

"*But, subject to the restrictions of the Federal Constitution, the state may determine the limits of the jurisdiction of its courts, and the character of the controversies which shall be heard in them. The state policy decides whether and to what extent the state will entertain in its courts transitory actions, where the causes of action have arisen in other jurisdictions.* Different states may have different policies and the same state may have different policies at different times. But any policy the state may choose to adopt must operate in the same way on its own citizens and those of other states. The privileges which it affords to one class it must afford to the other. Any law by which privileges to begin actions in the courts are given to its own citizens and withheld from the citizens of other States is void, because in conflict with the supreme law of the land." (Emphasis ours)

In the Second Employers' Liability Act cases (*Mondou* v. *New York, N. H. & H. R. Co.*), 223 U. S. 1, 32 S. Ct. 169, 177, 56 L. Ed. 327, 38 L. R. A., N. S., 44, decided January,

1912, which involved the construction of the Federal Employers' Liability Act, the Supreme Court of the United States discussed the right of Congress to enlarge or regulate the jurisdiction of state courts. In that case, Mr. Justice VAN DEVANTER, speaking for the court, made the following observations:

"We are quite unable to assent to the view that the enforcement of the rights which the congressional act creates was originally intended to be restricted to the Federal courts. The act contains nothing which is suggestive of such a restriction, and in this situation the intention of Congress was reflected by the provision in the general jurisdictional act. 'That the circuit courts of the United States shall have original cognizance, *concurrent with the courts of the several states*, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, *and arising under the Constitution or laws of the United States.*' 25 Stat. at L. 433, chap. 866, § 1, U. S. Comp. Stat. 1901, p. 508; *Robb* v. *Connolly*, 111 U. S. 624, 637, 4 S. Ct. 544, 28 L. Ed. 542, 546; *United States* v. *Barnes*, 222 U. S. 513, 32 S. Ct. 117, 56 L. Ed. 291. This is emphasized by the amendment engrafted upon the original act in 1910, to the effect that 'the jurisdiction of the courts of the United States under this act shall be *concurrent with that of the courts of the several states,* and no case arising under this act, and brought in any state court of competent jurisdiction shall be removed to any court of the United States.' *The amendment, as appears by its language, instead of granting jurisdiction to the state courts, presupposes that they already possessed it.*" (Only last emphasis ours.)

"*Because of some general observations in the opinion of the supreme court of errors, and to the end that the remaining ground of decision advanced therein may be more accurately understood, we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts, or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the prevailing rules of procedure.*" (Emphasis ours.)

The United States Supreme Court in the case of *Douglas* v. *New York, N. H. & H. R. Co.*, 279 U. S. 377, 49 S. Ct. 355, 356, 73 L. Ed. 747, decided May 13, 1929, which involved the constitutionality of New York state statutes relating to actions against foreign corporations by non-resi-

dents, expressly stated that the F. E. L. A. did not require state courts to entertain suits. Mr. Justice HOLMES ended the opinion with the following observation:

"*As to the grant of jurisdiction in the Employers' Liability Act that statute does not purport to require State Courts to entertain suits arising under it, but only to empower them to do so, so far as the authority of the United States is concerned.* It may very well be that if the Supreme Court of New York were given no discretion, being otherwise competent, it would be subject to a duty. *But there is nothing in the Act of Congress that purports to force a duty upon such Courts as against an otherwise valid excuse.* Second Employers' Liability Cases, [*Mondou* v. *New York, N. H. & H. R. Co.*] 223 U. S. 1, 56, 57, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A,, N. S., 44." (Emphasis ours.)

In *McKnett v. St. Louis & S. F. Ry. Co.*, 292 U. S. 230, 54 S. Ct. 690, 692, 78 L. Ed. 1227, decided April 30, 1934, the United States Supreme Court reversed the decision of the Supreme Court of the State of Alabama, which had held that no Alabama court had jurisdiction of any suit against a foreign corporation in respect to a cause of action arising in another state under federal law since the state statute providing for jurisdiction over foreign controversies was limited to suit arising under the law of another state. The action was brought under the F. E. L. A. and Mr. Justice BRANDEIS, speaking for the court said:

"While Congress has not attempted to compel states to provide courts for the enforcement of the Federal Employers' Liability Act (*Douglas* v. *New York, New Haven & Hartford R. R. Co.*, 279 U. S. 377, 387, 49 S. Ct. 355, 73 L. Ed. 747), the Federal Constitution prohibits state courts of general jurisdiction from refusing to do so solely because the suit is brought under a federal law. The denial of jurisdiction by the Alabama court is based solely upon the source of law sought to be enforced. The plaintiff is cast out because he is suing to enforce a federal act. A state may not discriminate against rights arising under federal laws."

In November, 1941, the Supreme Court of the United States in the case of *Baltimore & Ohio Railroad Co.* v. *Kepner,* 314 U. S. 44, 62 S. Ct. 6, 9, 86 L. Ed. 28, 37, 136 A. L. R. 1222, passed on the right of an Ohio court to enjoin a resident of that state from further prosecuting in another state a cause of action arising under the F. E. L. A. In that

case, the proceeding originally was brought by a railroad company to enjoin the plaintiff from prosecuting his suit in the United States District Court for the Eastern District of New York. The issue was whether or not a state court could enjoin a resident from pursuing his right of action in a foreign federal jurisdiction. That suit brought into focus interferences, direct and indirect, between federal and state courts. The Supreme Court of the United States concluded that the resident of the state of Ohio was free to pursue his remedies in the foreign federal jurisdiction without interference by the state court. The case involved maintaining the balance between federal and state jurisdiction, and the Supreme Court held that the state court could not by injunction deny the party his choice of a federal forum. Mr. Justice REED, speaking for the court, said:

"We read the opinion of the Supreme Court of Ohio to express the view that if it were not for section 6 of the Employers' Liability Act the requested injunction would be granted on the undisputed facts of the petition. Section 6 establishes venue for an action in the Federal Courts. As such venue is a privilege created by Federal statute and claimed by respondent the Supreme Court of Ohio felt constrained by the Supremacy Clause to treat Section 6 as decisive of the issue. It is clear that the allowance or denial of this federal privilege is a matter of federal law, not a matter of state law under *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, 72, 588 S. Ct. 817 [819], 82 L. Ed. 1188, [1191], 114 A. L. R. 1487. Its correct decision depends upon a construction of a federal act. Consequently the action of a state court must be in accord with the federal statute and the federal rule as to its application rather than state statute, rule or policy.

"Petitioner presses upon us the argument that the action of Congress gave an injured railway employee the privilege of extended venue, subject to the usual powers of the state to enjoin what in the judgment of the state courts would be considered an improper use of that privilege. This results, says petitioner, because the Act does not in terms exclude this state power. As courts of equity admittedly possessed this power before the enactment of Section 6, the argument continues, it is not to be lightly inferred that the venue privilege was in disregard of this policy. *But the federal courts have felt they could not interfere with suits in far federal districts where the inequity alleged was based only on inconvenience. There is no occasion to distinguish between the power and the propriety of its exercise in this instance since the limits of the two are here co-extensive. The privilege was granted because the general venue provisions worked injustices to employees. It is obvious that no state statute could vary the*

*venue and we think equally true that no state court may interfere with the privilege, for the benefit of the carrier or the national transportation system, on the ground of inequity based on cost, inconvenience or harassment.* When the section was enacted it filled the entire field of venue in federal courts. A privilege of venue granted by the legislative body which created this right of action cannot be frustrated for reasons of convenience or expense."

Mr. Justice FRANKFURTER wrote a dissenting opinion which was concurred in by the Chief Justice and Mr. Justice ROBERTS. This dissenting opinion brings out in bold relief the divergent views members of that court held with respect to whether the venue provisions of the F. E. L. A. limit the right of a state court to deal with citizens of its forum. The dissenting justices announced their concept of the law in the following language:

"Nor does it question the familiar doctrine of forum non conveniens under which a court having statutory jurisdiction may decline its facilities to a suit that in justice should be tried elsewhere. See *Canada Malting Co.* v. *Paterson Steamships*, 285 U. S. 413, 422, 423, 52 S. Ct. 413, [415], 76 L. Ed. 837, [842, 843]; *Mass.* v. *Missouri*, 308 U. S. 1, 19, 60 S. Ct. 39, [43], 84 L. Ed. 3, [10]; *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123, 130, 131, 53 S. Ct. 295, [297, 298], 77 L. Ed. 652, [656, 657], 89 A L. R. 720. These manifestations of a civilized judicial system are firmly imbedded in our law. See Foster, Place of Trial in Civil Actions, 43 Harvard L. Rev. 1217; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Columbia L. Rev. 1. Nor does the decision give new currency to the discredited notion that there is a general lack of power in the state courts to enjoin proceedings in federal courts. Cf. *Princess Lida* [of *Thurn and Taxis*] v. *Thompson*, 305 U. S. 456, 466, 59 S. Ct. 275, [280], 83 L. Ed. 285, [291]; Warren, Federal and State Court Interference, 43 Harvard L. Rev. 345. Nothing in Article III of the Constitution or in the legislation by which Congress has vested judicial power in the federal courts justifies such a doctrine.

"And so the basis of the decision of the Court must be found, if anywhere, in the terms of the venue provision of the Federal Employers' Liability Act. The section provides simply, that an action under the Act 'may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action,' that the jurisdiction of the federal courts shall be 'concurrent' with that of the state courts, and that no action brought in a state court of competent jurisdiction shall be removed to a federal court. [April 5, 1910] 36 Stat. [at L.] 291, [Chap. 143], 45 U. S. C. A. § 56. The phrasing of the section is not unique; it follows the familiar

pattern generally employed by Congress in framing venue provisions. E. g. 28 U. S. C. A. § 112 (suits based upon diversity of citizenship); 28 U. S. C. A. § 53 (suits by or against China Trade Act corporations); 28 U. S. C. A. § 104 (suits for penalties and forfeitures); 28 U. S. C. A. § 105 (suits for recovery of taxes); 28 U S. C. A. § 41 (26) (b) (interpleader). The decision cannot rest, therefore, upon any pecularities of the language of the provision.

"Nor can justification for the Court's conclusion be found in the legislative history of the section or the clearly expressed reasons of policy underlying its enactment. As the House and Senate committee reports show, H. Rept. No. 513, pp. 6—7, S. Rept. No. 432, pp. 3—4, 61st Cong., 2d Sess., Congress was aware of the hardship by which under the original Employers' Liability Act of April 22, 1908, 35 Stat. [at L.] 65, chap. 149, 45 U. S. C. A. § 51, the plaintiff could bring his action only at the railroad's 'residence.' *Cound* v. *Atchison, T. & S. F. R. Co.*, C. C., 173 F. 527. The amendment of 1910 greatly enlarged the range of a plaintiff's convenience in bringing suit. It is not disputed that the amendment was intended to open to a plaintiff courts from which he previously was barred. But that is not the question before us. The problem is whether the Act was intended to give a plaintiff an absolute and unqualified right to compel trial of his action in any of the specified places he chooses, thereby not only depriving state courts of their old power to protect against unjustly oppressive foreign suits, but also forbidding Federal courts to decline jurisdiction 'in the interest of justice' on familiar grounds of forum non conveniens. See *Canada Malting Co.* v. *Paterson Steamships*, 285 U. S. 413, 422, 423, 52 S. Ct. 414 [415], 76 L. Ed. 837, 842, 843. Nothing in the history of the 1910 amendment indicates that its framers contemplated any such vast transformation in the established relationship between federal and state courts and in the duty of the federal courts to decline jurisdiction 'in the interest of justice.' On the contrary, the expressed considerations of policy underlying the amendment were fundamentally the same as those underlying the equitable power to restrain oppressive suits and the reciprocal doctrine of forum non conveniens: It does not comport with equity and justice to allow a suit to be litigated in a forum where, on the balance, unnecessary hardship and inconvenience would be cast upon one party without any compensatingly fair convenience to the other party, but where, on the contrary, the suit might more conveniently be litigated in another forum available equally to both parties."

Subsequently, in 1942, in the case of *Miles* v. *Illinois Central Railway Company*, 315 U. S. 698, 62 S. Ct. 827, 830, 86 L. Ed. 1129, 146 A. L. R. 1104, the Supreme Court went one step further when it was presented with the question as to whether or not one state court could enjoin its citizens from suing a non-resident defendant carrier on an F. E. L. A. claim in a court of general jurisdiction of another state.

In that suit, by a five to four decision, the Supreme Court of the United States held that injunctive relief could not be granted in a F. E. L. A. case. In that case a Tennessee administratrix, a resident of that state, commenced an action in Missouri against the Illinois Central Railway Company, an Illinois corporation, for the death of her husband, the cause of action arising in Memphis, Tennessee. The majority opinion, written by Mr. Justice REED, states:

"The opportunity to present causes of action arising under the F. E. L. A. in the state courts came, however, not from the state law, but from the federal. By virtue of the Constitution, the courts of the several states must remain open to such litigants on the same basis that they are open to litigants with causes of action springing from a different source. This is so because the Federal Constitution makes the laws of the United States the supreme law of the land, binding on every citizen and every court and enforceable wherever jurisdiction is adequate for the purpose. Second Employers' Liability Cases (*Mondou* v. *New York, N. H. & H. R. Co.*) 223 U. S. 1, 56-59, 32 S. Ct. 169, [177, 178], 56 L. Ed. 327, [348-350], 38 L. R. A., N. S., 44, 1 N. C. C. A. 875. *The Missouri court here involved must permit this litigation.* To deny citizens from other states, suitors under F. E. L. A., access to its courts would, if it permitted access to its own citizens, violate the Privileges and Immunities Clause. Constitution, Art. IV, § 2; *McKnett* v. *St. Louis & S. F. R. Co.*, 292 U. S. 230, 233, 54 S. Ct 690, [691], 78 L. Ed. 1227, [1229]. Since the existence of the cause of action and privilege of vindicating rights under the F. E. L. A. in state courts spring from federal law, the right to sue in state courts of proper venue where their jurisdiction is adequate is of the same quality as the right to sue in federal courts. It is no more subject to interference by state action than was the federal venue in the Kepner Case. [*Baltimore & O. R. Co.* v. *Kepner*, 137 Ohio St. 409, 30 N. E. 2d 982]" (Emphasis ours)

"*This is not to say that states cannot control their courts. We do not deal here with the power of Missouri by judicial decision or legislative enactment to regulate the use of its courts generally as was approved in the Douglas or in the Chambers Cases, note 6 supra. We are considering another state's power to so control its own citizens that they cannot exercise the federal privilege of litigating a federal right in the court of another state.*" (Emphasis ours)

Mr. Justice FRANKFURTER again wrote the dissenting opinion and he comprehensively touches on the authority of Congress to direct state courts in the operation of their business. We quote from the dissenting opinion for the reason that when consideration is given to the thoughts

expressed by Mr. Justice JACKSON (later referred to) the principles here quoted appear to carry the approval of a majority of the court.

"This is a conventional provision. There is nothing novel or distinctive about it. Recognition of concurrent jurisdiction in the state courts to vindicate federal rights is found in the first Judiciary Act of (September 24) 1789. 1 Stat. [at L.], 73, 77. [chap. 20] And the statute books are replete with instances in which Congress has acknowledged the existence of this jurisdiction in the state courts unless explicitly withheld from them. See the discussion of Mr. Justice Bradley in *Claflin* v. *Houseman*, 93 U. S. 130, 139-143, 23 L. Ed. 833 [839, 840]. *The essence of Section 6 is merely that the 'state courts are open to a plaintiff suing under the Act, and that if he chooses to bring suit in a state court, the defendant may not remove the cause to a federal court.' So far as language conveys ideas, the Act affords no intimation that Congress intended anything more.*

\* \* \* \* \* \*

"*The utilization of state courts for the vindication of federal rights does not require that their established procedures be remodeled or that their customary modes for administering justice be restricted. 'And it was of course presumably an appreciation of the principles so thoroughly settled which caused Congress, in the enactment of the Employers' Liability Act, to clearly contemplate the existence of a concurrent power and duty of both Federal and state courts to administer the rights conferred by the statute in accordance with the modes of procedure prevailing in such courts.'* Minneapolis & St. L. R. Co. v. Bombolis, 241 U. S. 211, 218, 36 S. Ct. 595, [597], 60 L. Ed. 961, [964], L. R. A. 1917 A, 86, Ann. Cas. 1916 E, 505; and see Second Employers' Liability Cases, [*Mondou* v. *New York, N. H. & H. R. Co.*]· 223 U. S. 1, 56, 32 S. Ct. 169 [177], 56 L. Ed. 327, [348], 38 L. R. A., N. S., 44 [1 N. C. C. A. 875]. The mere fact that a federal right is the basis of suit cannot therefore deprive the state courts of the power to use their customary procedures for the achievement of justice. In simply taking advantage of the facilities afforded by the courts of the states, Congress cannot be deemed to have altered the settled jurisprudence of the states so as to operate more favorably for federal rights than for similar rights created by the states themselves. Such drastic inroads upon the authority of the states should be made only upon clear Congressional mandate." (Emphasis ours.)

If we interpret Mr. Justice REED'S statement that "the Missouri court here involved must permit this litigation" as meaning that Congress intended to make the venue requirements mandatory on all state courts then this concept does not become the holding of the Court as Mr. Justice JACKSON, who was one of the five members joining in the majority opinion, expressly disagrees with the state-

ment. In his concurring opinion he makes the following comment:

"*I do not, however, agree with the statement in Mr. Justice Reed's opinion that 'the Missouri court here involved must permit this litigation.' It is very doubtful if any requirement can be spelled out of the federal Constitution that a state must furnish a forum for a nonresident plaintiff and a foreign corporation to fight out issues imported from another state where the cause of action arose.* It seems unnecessary to decide now whether this litigation could be imposed on the Missouri court, for it appears to have embraced the litigation. Even if Missouri, by reason of its control of its own courts might refuse to open them to such a case, it does not follow that another state may close Missouri's courts to one with a federal cause of action. If Missouri elects to entertain the case, the courts of no other state can obstruct or prevent its exercise of jurisdiction as conferred by the federal statute or its right to obtain evidence and to distribute the proceeds, if any, in accordance with the Federal Employers' Liability Act. I therefore favor reversal." (Emphasis ours.)

In the case of *Herb* v. *Pitcairn*, 324 U. S. 117, 122, 65 S. Ct. 459, 460, 89 L. Ed. 789, decided February 5, 1945, and which involved the venue of F. E. L. A. cases, Mr. Justice JACKSON, speaking for the United States Supreme Court, said:

"Whether any case is pending in the Illinois courts is a question to be determined by Illinois law, as interpreted by the Illinois Supreme Court. *For as we have said of the Federal Employers' Liability Act, 'we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts, or to control or affect their modes of procedure, but only a question of the duty of such a court when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the prevailing rules of procedure.'* Mondou v. New York, N. H. & H. R. Co. 223 U. S. 1, 56, 57, 32 S. Ct. 169, 178, 56 L. Ed. 327, 38 L. R. A. N. S., 44. *'As to the grant of jurisdiction in the Employers' Liability Act, that statute does not purport to require State Courts to entertain suits arising under it but only to empower them to do so, so far as the authority of the United States is concerned.* * * * But there is nothing in the Act of Congress that purports to force a duty upon such courts as against an otherwise valid excuse.' Douglas v. New York, N. H., & H. R. Co., 279 U. S. 377, 387, 388, 49 S. Ct. 355, 356, 73 L. Ed. 747. And see Chambers v. Baltimore & Ohio R. Co., 207 U. S. 142, 148, 149, 28 S. Ct. 34, 35, 36, 52 L. Ed. 143; St. Louis I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061; John v. Paullin, 231, U. S. 583, 34 S. Ct. 178, 58 L. Ed. 381." (Emphasis ours.)

In the case of *Gulf Oil Corporation* v. *Gilbert*, 330 U. S. 501, 67 S. Ct. 839, 840, 91 L. Ed. 1055, the Supreme Court of the United States in March, 1947, fully discussed the doctrine of forum non conveniens and its application to courts of the Federal system. Mr. Justice JACKSON, speaking for a majority of the court, set out the history and development of the doctrine in the following language:

"It is conceded that the venue statutes of the United States permitted the plaintiff to commence his action in the Southern District of New York and empower that court to entertain it But that does not settle the question whether it must do so. Indeed, the doctrine of forum non conveniens can never apply if there is absence of jurisdiction or mistake of venue.

"This Court, in one form of words, or another, has repeatedly recognized the existence of the power to decline jurisdiction in exceptional circumstances. As formulated by Mr. Justice Brandeis the rule is: 'Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true; else the admiralty court could never decline jurisdiction on the ground that the litigation is between foreigners. Nor is it true of courts administering other systems of our law. Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or non-residents or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal.' *Canada Malting Co.* v. *Paterson Steamships*, 285 U. S. 413, 422, 423, 52 S. Ct. 413, [415], 76 L. Ed. 837 [842, 843].

"We later expressly said that a state court 'may in appropriate cases apply the doctrine of forum non conveniens.' *Broderick* v. *Rosner*, 294 U. S. 629, 643, 55 S. Ct. 589, [592], 79 L. Ed. 1100, [1107], 100 A. L. R. 1133; *Williams* v. *North Carolina*, 317 U. S. 287, 294, note 5, 63 S. Ct. 207, [211], 87 L. Ed. 279, [283], 143 A. L. R. 1273. *Even where federal rights binding on state courts under the Constitution are sought to be adjudged, this Court has sustained state courts in a refusal to entertain a litigation between a non-resident and a foreign corporation or between two foreign corporations.* *Douglas* v. *New York, N. H. & H. R. Co.*, 279 U. S. 377, 49 S. Ct. 355, 73 L. Ed. 747; *Anglo-American Provision Co.* v. *Davis Provision Co.* [No. 1], 191 U. S. 373, 24 S. Ct. 93, 48 L. Ed 225. It [has] held the use of an inappropriate forum in one case an unconstitutional burden on interstate commerce. *Davis* v. *Farmers' Co-op. Equity Co.* 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996. On substantially forum non conveniens grounds we have required federal courts to relinquish decision of cases within their jurisdiction where the court would have to participate in the administrative policy of a state. *Railroad Commission* [of Texas] v. *Rowan & N. Oil Co.*, 311 U. S. 570, 61 S. Ct. 343, 85 L. Ed. 358; *Burford* v. *Sun Oil Co.*, 319 U. S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424; but cf. *Meredith* v. [City of] *Winter Haven*, 320 U. S. 228, 64 S. Ct. 7, 88 L. Ed. 9. And most recently we decided *Williams* v. *Green Bay & W. R. Co.*, 326 U. S. 549, [90 L. Ed. 311], 66 S.

Ct. 284, in which the Court, without questioning the validity of the doctrine, held it had been applied in that case without justification.

"It is true that in cases under the Federal Employers' Liability Act, [45 U. S. C. A. § 51 et seq.], we have held that plaintiff's choice of a forum cannot be defeated on the basis of forum non conveniens. But this was because the special venue act under which those cases are brought was believed to require it. Baltimore & O. R. Co. v. Kepner, 314 U. S. 44, 62 S. Ct. 6, 86 L. Ed. 28, 136 A. L. R. 1222; Miles v. Illinois C. R. Co., 315 U. S. 698, 62 S. Ct. 827, 86 L. Ed. 1129, 146 A. L. R. 1104. Those decisions do not purport to modify the doctrine as to other cases governed by the general venue statutes.

\* \* \* \* \* \*

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice, but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

"Many of the states have met misuse of venue by investing courts with a discretion to change the place of trial on various grounds, such as the convenience of witnesses and the ends of justice. The federal law contains no such express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it." (Emphasis ours.)

In the two latest cases dealing with this subject there is language which might be construed to mean that prior to the time Congress enacted Section 1404 (a) forum non conveniens was never available on F. E. L. A. suits. However, in both instances it must be considered that the Court was disposing of cases which reached the Supreme Court through the Federal Court system. In Ex parte Collett, 337 U. S. 55, 69 S. Ct. 944, 945, 93 L. Ed. 1207, 10 A. L. R. 2d 921, decided May 31, 1949, Mr. Chief Justice VINSON delivered the opinion of the court, and in the course of the opinion made the following statement:

"Prior to the current revision of Title 28 of the United States Code, forum non conveniens was not available in Federal Employers' Liability Act suits. Baltimore & Ohio R. Co. v. Kepner, 1941, 314 U. S. 44, 62 S. Ct. 6, 86 L. Ed. 28, 136 A. L. R. 1222; Miles v. Illinois Central R Co., 1942, 315 U. S. 698,

62 S. Ct. 827, 86 L. Ed. 1129, 146 A. L. R. 1104; see *Gulf Oil Corp.* v. *Gilbert*, 1947, 330 U. S. 501, 505, 67 S. Ct. 839, 91 L. Ed. 1055. The new Code, however, provides that 'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. This is § 1404 (a)  *  *  *"

In a companion case, decided the same day, *United States* v. *National City Lines, Inc.,* 337 U. S. 78, 69 S. Ct. 955, 956, 93 L. Ed. 1226, Mr. Chief Justice VINSON in disposing of the doctrine of forum non conveniens in antitrust suits stated:

"This is the second time that an order of the court below, the United States District Court for the Southern District of California, attempting to effectuate a transfer of the case from Los Angeles to Chicago, has been before this Court. When respondents' motion was first granted, the District Court dismissed the action, 1947, 7 F. R. D. 456, inasmuch as the federal courts then lacked statutory power to transfer cases. We reversed, holding that *forum non conveniens* was not applicable in anti-trust suits. *United States* v. *National City Lines* [1948], 334 U. S. 573, 68 S. Ct. 1169, 92 L. Ed. 1584, [June 7, 1948]. After September 1, 1948, the effective date of the present Judicial Code, respondents filed a new motion under the doctrine of *forum non conveniens*, citing § 1404 (a), which reads as follows: 'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.' Again the District Court below granted the motion. It ordered the case transferred. · D. C. 1948, 80 F. Supp. 734. The Government thereupon submitted in this Court a motion for leave to file petition for writ of certiorari. We assigned the case for hearing on this motion. 1948, 335 U. S. 897, 69 S. Ct. 296 [93 L. Ed. 432]."

We have attempted to set out the important United States Supreme Court cases dealing with the doctrine of forum non conveniens. At first blush it may appear that there are inconsistent statements and holdings in those cases discussing the doctrine as applied in Federal Employers' Liability Act cases. However, by limiting the statements to context and the issues involved we have concluded the various cases are consistent and each can be reconciled with the others. This conclusion is based upon the evolution of the doctrine and the system to which it was being applied by the United States Supreme Court at the time of the decision. Included in the previously cited cases

are those which deal with the powers of Federal Courts under the federal system and those which deal with the power of State Courts under state procedures. A more rigid and inflexible rule has been announced when the power of the Federal Courts has been the issue.

Prior to the enactment of Section 1404 (a) neither the Constitution nor federal statutes specifically authorized federal courts to refuse jurisdiction of any case. The early federal cases apparently required the exercise of jurisdiction in all cases. Accordingly, when the Federal Employers' Liability Act was passed and venue was extended to any district in which the defendant was an inhabitant or where either of the parties resided, the Supreme Court of the United States reiterated the previous holdings that in federal cases jurisdiction must be assumed. The Federal Employers' Liability Act having enlarged the venue provisions has uniformly been interpreted by the United States Supreme Court to permit the plaintiff a choice of forum and if he elected a Federal forum under the federal practice the cause could neither be transferred nor dismissed. As stated in some of the quoted opinions there was no provision or authority by which a federal court could transfer a cause to another federal district or dismiss the same because of inconvenience. This reason seems to account for the holding of and the statements included in the cases of *Baltimore & Ohio R. Co.* v. *Kepner,* supra; *Gulf Oil Corp.* v. *Gilbert,* supra; *Ex parte Collett,* supra; and *United States* v. *National City Lines,* supra. The language used in those cases must be interpreted in light of the fact that the actions were dealing with the powers, rights, and limitations of federal courts and the practice approved by the Supreme Court in the federal system. If we limit the discussions in those cases to the federal system the concept is established that Congress could and did dictate to the federal courts that they must accept and exercise the

jurisdiction conferred by the F. E. L. A. and that transfers or dismissals for convenience were inapplicable.

A different principle is involved and, we believe, has been announced when a suit is instituted in a state court. In practically every cited case we find statements to the effect that the state concerned determines the limitations of the jurisdiction of its courts and the character of the controversy which it will hear. Each separate state decides whether and to what extent it will entertain in its courts transitory causes of action when they arise in other jurisdictions. It seems that weaving throughout the cases is the principle announced in the Second Employers' Liability Act Cases, supra. There the Supreme Court held that when Congress enacted the Federal Employers' Liability Act it did not attempt to enlarge, regulate or control the jurisdiction of the state courts or affect their modes of procedure. All that was intended by that enactment was to confer jurisdiction on the state courts to hear and try the issues if consistent with the practice then in vogue. It would indeed be bringing into imbalance the respective powers of the federal and state governments to permit the Congress to dictate the terms and conditions under which a state court must administer the law. As the majority of the Supreme Court held in *Miles* v. *Illinois Central Railroad Co.*, supra, the state court was not required to permit F. E. L. A. litigation under all causes and under all circumstances.

While the United States Supreme Court has held that one state may not enjoin one of its citizens from prosecuting a cause of action under a F. E. L. A. statute in another state or Federal Court, there are principles other than forum non conveniens involved in those holdings. There is the problem that Congress has permitted suit in the courts of all states and there may be some limitation on a state's right to prevent its citizens from taking advantages of rights given by federal statutes when the state entertaining

the suit is willing to assume jurisdiction. That question involves principles separate and distinct from the right of a state to attach some conditions to the use of its courts by nonresidents.

In order to reconcile the doctrine announced in the case of *Douglas* v. *New York, N. H. & H. R. Co.,* supra, with the holdings in the other cases and for us to give full force and effect to the language used in each of the decisions we must necessarily conclude that the United States Supreme Court has held that prior to the enactment of Section 1404 (a) the doctrine of forum non conveniens was unavailable in the Federal Court system because of the special venue provisions; that in state courts the doctrine was available in all types of cases; and, that even though available under state procedures the doctrine could not be used by a sister state as the foundation for enjoining a resident from using the courts of another state which was willing to keep its courts open for F. E. L. A. litigants. If we have correctly interpreted the holdings, then unless we deny to the plaintiff equal protection of the law we are constitutionally permitted to require him to try his cause in a more convenient jurisdiction.

A search of the reporters for state cases dealing with this subject discloses that the states of New York, Ohio, New Jersey and Illinois have passed on this or a closely related principle and have adopted the doctrine that forum non conveniens can be used in all types of cases, including F.E. L.A. actions; and the states of Missouri and California have reached a contrary result. For the benefit of the parties and for those interested in the use and application of this doctrine, we quote from some of the cases which treat with the doctrine. We first cite those cases denying the power of the state court to dismiss on the grounds of inconvenience.

The Supreme Court of California in the case of *Leet* v. *Union Pacific R. Co.* 25 Cal. 2d 605, 155 P. 2d 42, 44,

decided in December, 1944, held that a state court having jurisdiction of actions under the Federal Employers' Liability Act may not refuse to act on the doctrine of forum non conveniens. We set out the quotations from the majority and the dissenting opinions to illustrate the different views concerning the powers of state courts to refuse jurisdiction. Mr. Justice Carter, speaking for the court, said:

"Whatever may have been the rule on the subject from time to time it is now settled that the state court having jurisdiction may not refuse to exercise it. The doctrine of forum non conveniens, claim of a burden on interstate commerce, or war conditions constitute no justification for a refusal to exercise jurisdiction.

"The rule of forum non conveniens is an equitable one embracing the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action before it may be more appropriately and justly tried elsewhere. If the plaintiff by reason of section 56 has an absolute right to have the action tried in the named courts, there is no room for the doctrine. It has been repeatedly held that the right to have an action brought under the act tried in one of the mentioned *federal district courts* is absolute. *Connelly* v. *Central R. Co.* of New Jersey, D.C., 238 F. 932; see *Baltimore & Ohio R. Co.* v. *Kepner*, 314 U. S. 44, 62 S. Ct. 6, 86 L. Ed. 28, 136 A.L.R. 1222; *Miles* v. *Illinois Central R. Co.*, 315 U.S. 698, 62 S. Ct. 827, 86 L. Ed. 1129, 146 A.L.R. 1104; *Trapp* v. *Baltimore & O. R. Co.*, D.C., 283 F. 655. And that right cannot be defeated by the doctrine of forum non conveniens, convenience, or other equitable grounds such as vexatious suits or anything else except congressional action; the court has a duty to exercise its jurisdiction. *Schendel* v. *McGee*, 8 Cir. 300 F. 273; *Southern R. Co* v. *Painter*, 8 Cir., 117 F.2d 100; *Southern R. Co.* v. *Cochran*, 6 Cir., 56 F. 2d. 1019; *Chesapeake & Ohio R. Co.* v. *Vigor*, 6 Cir., 90 F. 2d.

7, certiorari denied 302 U.S. 705, 58 S. Ct. 25, 82 L. Ed. 545; *Rader* v. *Baltimor & Ohio R. Co.*, 7 Cir., 108 F. 2d 980; *Miles* v. *Illinois Central R. Co.*, supra; *Baltimore & Ohio R. R. Co.* v. *Kepner*, supra; *Union Pac. R. Co.* v. *Utterback*, supra (*Union Pac. R. Co.* v. *Thatcher*) [173 Or. 572, 146 P. 2d 76, 769]."

Mr. Justice Edmonds, the author of the dissenting opinion, states his interpretation in the following language:

"The decisions of the Supreme Court of the United States do not compel the conclusion that a state court is powerless to refuse jurisdiction of any action brought under the Federal Employers' Liability Act, 45 U. S. C. A. § 51. On the contrary, in its most recent interpretation of that legislation, five members of the court were of the view that the venue provision (section 6) does not compel a state to open its forums to all cases arising under the statute under all circumstances. *Miles* v. *Illinois Central R. Co.*, supra. And consistent with that view are a number of prior decisions. *McKnett* v. *St. Louis & S. F. R. Co.*, 292 U. S. 230, 54 S. Ct. 690, 78 L. Ed. 1227; *Denver & Rio Grande W. R. Co.* v. *Terte*, 284 U. S. 284, 52 S. Ct. 152, 76 L. Ed. 295; *Douglas* v. *New York, New Haven & Hartford R. Co.*, 279 U. S. 377, 49 S. Ct. 355, 73 L. Ed. 747; *Michigan Cent. R. Co.* v. *Mix*, 278 U. S. 492, 49 S Ct. 207, 723 L. Ed. 470; *Hoffman* v. *Missouri ex rel. Foraker*, 274 U. S. 21, 47 S. Ct. 485, 71 L. Ed. 905; *Atchison, Topeka & Santa Fe. R. Co.* v. *Wells*, 265 U. S. 101, 44 S. Ct. 469, 68 L. Ed. 928; *Davis* v. *Farmers' Co-operative Equity Co.*, 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 906.

"In the Miles case, *Justices Frankfurter, Roberts, Byrnes*, and *Chief Justice Stone* were of the opinion that 'Section 6 did not give the state courts compulsive jurisdiction,' and *Justice Jackson*, in sharing that view, stated: 'It is very doubtful if any requirement can be spelled out of the Federal Constitution that a state must furnish a forum for a non-resident plaintiff and a foreign corporation to fight out issues imported from another state where the cause of action arose.' Under this construction of the statute, it was the duty of the trial judge in the present litigation to hear and determine, upon the merits, the railroad company's motions for a continuance, exercising a sound discretion as to whether, upon the facts presented, and the trials of the two actions should be continued for either an indefinite or a stated period."

The Supreme Court of Missouri in one of the latest cases we have been able to find, State ex rel. *Southern Ry. Co.* v. *Mayfield*, 359 Mo. 827, 224 S. W. 2d 105, 109, held that the the doctrine of forum non conveniens was inapplicable in F.E.L.A. cases. The court there analyzed the United States Supreme Court's decision and concluded that the state

courts were required to assume jurisdiction and after such assumption, to exercise it to the end that the courts must be kept open for litigants from other states. Justice Tipton, speaking for the court in that case, makes the following observations:

"Thus it is clear that under the Kepner and Miles cases, supra, a state court cannot dismiss a Federal Employers' Liability case solely under the forum non conveniens doctrine. *'The Federal Employers' Liability Act, as interpreted by Kepner, increases the number of places where the defendant may be sued and makes him accept the plaintiff's choice.'* * * * *Gulf Oil Corporation* v. *Gilbert,* supra, 67 S. Ct. 839, loc. cit. 842, [91 L. Ed. 1055, 330 U. S. 501].

"Relators rely mainly upon the case of *Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377, 49 S. Ct. 355, 73 L. Ed. 747. In that case a resident of Connecticut brought a suit in a state court of New York under the Federal Employers' Liability Act against the defendant, a Connecticut corporation, for personal injuries inflicted in Connecticut. The trial court dismissed the action under a statute which it held gave it discretion in suits brought by non-resident plaintiffs. The trial court action was affirmed by the New York Court of Appeals. 248 N. Y. 580, 162 N. E. 532. This was the statute in question: 'An action against a foreign corporation may be maintained by another foreign corporation, or by a non-resident, in one of the following cases only: * * * 4. Where a foreign corporation is doing business within this State.' Code Civ. Proc. § 1780.

"The Supreme Court of the United States held that this statute was not in violation of Article 4, Section 2, of the Constitution of the United States, as discriminating between citizens of New York and citizens of other states where construed as using the word 'resident' in the strict primary sense of one actually living in the place for a time, irrespective of domicile. Such was the construction placed upon this statute by the New York Court of Appeals. 248 N. Y. 580, 162 N. E. 532. It also held that state courts are not required to entertain suits under the Federal Employers' Liability Act, but are empowered to do so.

"We do not think this case sustains the relator. The common law doctrine of *forum non conveniens* is not even mentioned in the opinion. In the first place, Missouri does not have a statute similar to the New York statute which the courts of the state have held to give them discretionary power to dismiss an action brought by a non-resident as distinguished from a citizen of another state. Also, Missouri permits citizens of this state to Federal Employer's Liability cases in its courts. To deny the same privilege to citizens of another state would violate Article 4, Section 2, of the Constitution of the United States."

The following excerpts are taken from cases which we believe sustain the views expressed by us. These cases are

likewise cited in chronological order but no effort has been made to collate the times of the decisions with those cited from the Supreme Court of the United States.

The Supreme Court of the State of Ohio in *Loftus* v. *Pennsylvania R. Co.*, 1923, 107 Ohio St. 352, 140 N. E. 94, 96, held that the venue provisions of the Federal Employers' Liability Act were not mandatory on the courts of the state of Ohio. Chief Justice Marshall, speaking for the court said:

"The next question for determination is whether section 11273, General Code, applies to causes of action arising under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665 [45 U. S. C. A. §§ 51-59], and whether the provisions of that act relating to jurisdiction make it compulsory upon the courts of general jurisdiction in this state to hear such causes even though such suits may be begun in a county where the plaintiff does not reside or where the cause of action did not arise.

"It has already been seen that the language of the amendment is broad enough to exclude such actions. The federal act contains the following provision:

" 'The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states.' 36 Stat. at L. 291; section 8074, Barnes Fed. Code; section 8662, U. S. Comp. Stat. [45 U. S. C. A. § 56].

"It is undoubted that the trial courts of this state have jurisdiction of the subject-matter of causes arising under the federal act, and that in all cases where the plaintiff is able to come within the terms of the amendment of section 11273, General Code, our trial courts have complete jurisdiction. While it is very clear that the Legislature of Ohio could confer compulsory jurisdiction upon the trial courts to hear all such cases, regardless of the residence of the plaintiff or the locality of the injury, it does not follow that the federal lawmaking power can thus confer compulsory jurisdiction; neither does it appear in the language above quoted that it has attempted to do so. The claims made by plaintiff in error lose sight of the clear distinction between creating a right and providing a remedy. The right is created by the enactment of the statute. The remedy is provided by establishing courts and declaring their jurisdiction.

"An Illinois statute provides that—

" 'No action shall be brought or prosecuted in this state, to recover damages for a death occuring outside of this state.' Laws 1903, p. 217 [Smith-Hurd Stats. c. 70 § 2].

"The case of *Walton, Adm'x* v. *Pryor*, 276 Ill. 563, 115 N. E. 2, L. R. A.

1918 E, 914, was brought to recover upon a liability arising under the federal Employers' Liability Act, and the question arose whether the Illinois courts were compelled to entertain an action where the death occurred outside of the state. The Supreme Court of Illinois held that the action could not be entertained, and that jurisdiction of the subject-matter could not be conferred even by consent of the parties. The court further stated that Congress cannot confer jurisdiction upon any court which it has not created, and that the federal Constitution contains no restriction upon the power of a state to determine the limits of the jurisdiction of its courts, except that the state must give to the citizens of other states the same rights that it accords to its own citizens."

In 1927, the State of New York, in the case of *Murnan* v. *Wabash Railway Company*, 246 N.Y. 244, 158 N.E. 508, 509, 54 A.L.R. 1522, passed on the question of whether or or not the courts of that state could decline jurisdiction of an action brought under the F.E.L.A. by a non-resident of New York against, a foreign corporation. Mr. Justice Pound delivered the opinion of the court and stated:

"Although the rule prohibits a court of general jurisdiction from refusing to exercise its jurisdiction in its discretion, it has often been held that the courts of this state may refuse in their discretion to entertain jurisdiction over causes of action arising out of a tort committed in a sister state where both the plaintiff and defendant are non-residents. *Gregonis* v. *Philadelphia & R. Coal & I. Co.*, 235, N. Y. 152 160, 139 N. E. 223, 32 A. L. R. 1, and cases cited. While no controlling reason compelled, the Special Term refused to assume jurisdiction. It refused, it would seem, for reasons of convenience, to hear the case, and vacated the service of the summons under the authorities referred to.

"The appellate division held that the Federal Employers' Liability Act which conferred, or recognized, concurrent jurisdiction in the state courts, made it mandatory upon the state court not to refuse to exercise its jurisdiction, when it had such jurisdiction, in any case brought under the act. It relied on the case of [Second Employers' Liability Cases] *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A., N. S., 44 [1 N. C. C. A. 875]. The case is authority for the bare proposition that, where the state courts would exercise their jurisdiction except for the fact that the action is brought under the act of Congress, they may not refuse to exercise jurisdiction because the action is brought under the laws of the United States. The court said:

" 'The existence of the jurisdiction creates an implication of duty to exercise it. * * * We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion.' * * *

"This general language read in connection with what was actually decided means nothing more than that the state courts must make no hostile discrimination against litigants who come within the act in question; that they must treat litigants under the federal act as other litigants are treated; that they are to act in conformity with their general principles of practice and procedure and are not to deny jurisdiction merely because the right of action arises under the act of Congress.

"The court seems to make this meaning clear. It says, in substance, that it is advised by decisions of the supreme court of errors that the Superior Courts of the state of Connecticut are not only empowered to take cognizance of actions to recover for personal injuries and death, but *are accustomed* to exercise that jurisdiction in cases where the right of action arises under the laws of another state. It says further: 'We deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts, *or to control or affect their modes of procedure,* but only a question of the duty of such a court, when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the *prevailing rules of procedure.*' * * *

"The courts of New York exercise their discretion in all other cases where a tort action is brought by one non-resident against another under the laws of another state. The practice may be anomalous, but it is well established. That Congress has undertaken to regulate the exercise of jurisdiction by our courts by making compulsory what in other similar cases is discretionary seems an unreasonable conclusion and a resulting invasion of the powers of our tribunals as heretofore exercised. We conclude that a litigant who brings his action under the federal Employers' Liability Act stands before the court in no different attitude than a litigant who brings his action under the statute of a sister state. He may not be cast out because he is suing under the act of Congress. He may not enforce his rights merely because he is suing under the act."

The Supreme Court of the State of New Jersey in 1940 held that the doctrine of forum non conveniens is applicable to the practice in that jurisdiction. In *Anderson v. Delaware, L. & W. R. Co.,* 11 A. 2d 607, 608, 18 N. J. Misc. 153, Mr. Justice Wolber, speaking for the court said:

"It is contended, however, for the reasons stated, that our courts have the power to consider the circumstances of each particular case and to exercise their discretion to decline jurisdiction in such actions if it appears improper to entertain the same. It is asserted that the facts in the instant case are such that require that discretion to be exercised against these plaintiffs and accordingly remit them to the courts of their domicile.

"The doctrine invoked is something like the civil law plea of *forum non conveniens*. It has received extended treatment by the courts of this country. See extensive note following *Gregonis* v. *Philadelphia & Reading Coal & Iron Company*, 235 N. Y. 152, 139 N. E. 223, 32 A. L. R. 1 (resident v. foreign corporation for out-of-state tort), article, Blair, 'The Doctrine of Forum, *Non Conveniens* in Anglo-American Law' (1929) XXIX Col. L. Rev. 1, and articles by Foster, 'Place of trial in Civil Actions,' 43 Harv. L. Rev. 1217, and 'Place of Trial, Intrastate Application of Intrastate Methods of Adjustment,' 44 Harv. L. Rev. 41. Briefly stated, its rationale is that the courts should not allow their time to be taken up with the burden and expense of trying actions which ought under the circumstances to be brought in the jurisdiction where the parties reside, where the cause arose and where the home courts of litigants are open and provide an effectual remedy for the settlement of their grievances. *Collard* v. *Beach*, 93 App. Div. 339, 87 N. Y. S. 884. This principile is often embodied in statutes of some states. It has been of such long standing in other states as to be evidence of the public policy of those estates. *Universal Adjustment Corp.* v. *Midland Bank*, 281 Mass. 303, 184 N. E. 152, 87 A. L. R. 1407; *Jackson & Sons* v. *Lumbermen's Mutual Casualty Ins. Co.*, 86 N. H. 341, 168 A. 895. It is applicable to actions in contract and tort, although the tendency is to apply it strictly in tort actions for personal injuries and moderately in commercial transactions. *Werterheim* v. *Clergue*, 53 App. Div. 122, 65 N. Y. S. 750; *Davis* v. *Julius Kessler & Co.*, 118 Misc. 292, 194 N. Y. S. 9."

It should be observed that the motion to dismiss was denied in this case because of the facts and circumstances indicating that the statute of limitations had run in the foreign jurisdiction and no real inconvenience was established.

In the case of *Motley* v. *Kansas City Southern Railway Co.*, unreported, decided December 16, 1949, Judge Robson, speaking for the Superior Court of Cook County, Illinois, in ruling on a motion to dismiss a cause on the ground of forum non conveniens, stated:

'The Court desires to discuss two cases decided since the opinion by Judge Epstein.

"In the case of *Ex parte Collett*, 337 U. S. 55, 69 S. Ct. 944, 93 L. Ed. 1207, 10 A. L. R. 2d 921, the Supreme Court of the United States sustained the right of the Federal District Court to transfer a F. E. L. A. case under the new Federal Judicial Code, Title 28, Section 1404 (a). *Chief Justice Vinson*, in deciding the case, said on page 56: 'In this case we must decide whether the venue provisions of the Judicial Code render applicable the doctrine of *forum non conveniens* to actions under the

F. E. L. A.' The Court, after a careful consideration of the statute decided it did have the right.

"Much stress is laid by able counsel for the plaintiff on the recent decision of *Missouri ex rel. Southern Ry. Co.* v. *Mayfield, et al.,* [359 Mo. 827, 224 S. W. 2d 105], of the Supreme Court of Missouri. To give credence to this decision would place our courts in the position of allowing the Congress of the United States to regulate our jurisdiction and to control and affect our modes of procedure. This, our court has consistently refused to do and is sustained in its position by the decisions of the Supreme Court of the United States. *Douglas* v. *New York, New Haven & Hartford R. Co.* 279, U. S. 377, [49 S. Ct. 355, 73 L. Ed. 747]; Second Employers Liability Act cases (*Mondou* v. *N. Y. H. & H. R. Co*) 223 U. S. 1, 56 and 57 [32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A., N. S. 44]; *Miles* v. *Illinois Cent. R. R. Co.,* 315 U. S. 698, 704 [62 S Ct. 827, 86 L. Ed. 1129, 146 A. L. R. 1104]. Missouri apparently has no announced doctrine of *forum non conveniens.* Illinois does. *Whitney* v. *Madden,* 400 Ill. 185 [79 N. E. 2d 593]; *Walton* v. *Pryor,* 276 Ill. 563 [115 N. E. 2, L. R. A. 1918 E, 914]."

Plaintiff contends that if this court were to embrace the doctrine of forum non conveniens we would violate Section 2, Article IV, of the Constitution of the United States and the Fourteenth Amendment in that plaintiff would be denied the same privileges and immunities granted ■ to citizen of this and other states; and further, that he would be denied the equal protection of the laws. It would be necessary to sustain plaintiff's contention if we were to hold that the doctrine was applicable only in cases arising under federal acts or if we were to discriminate against him by refusing to enforce a right granted by a federal statute. Furthermore, the same complaint would be legitimate if we did not accord to plaintiff substantially the same access to our courts we accord our own citizens. However, we are of the opinion that if the doctrine is applied in this cause and applied in all instances when a cause of action arises out of the state and the residence of one party or all parties makes the doctrine applicable, we do not run afoul of the federal constitutional provisions under such an interpretation and procedure. We accord to every litigant the right to institute a suit in the courts of this state subject to the right of the other party to enter a plea of forum non conveniens when the cause of action

arises outside the jurisdiction of this state. It may be conceded that the doctrine may have little or no application if one of the parties resides in this state, but because one litigant may not be able to sufficiently establish inconvenience does not render the application of the principle in other cases unconstitutional.

In support of the claim of unconstitutional application plaintiff cites to us many cases in which this court has entertained causes of action arising in other jurisdictions under federal or state acts. We concede that the district courts of this state have consistently accepted jurisdiction of these cases and proceeded to try the cases. Moreover, this court has passed on the legal principles involved. There would be force to this contention if in any of the cases to which we are referred the doctrine of forum non conveniens had been in issue and this court had announced a holding contrary to the one adopted in this decision. A review of the many cases cited shows that a plea of inconvenience has not been interposed and this court has never been called upon to pass on the precise question. The absence of the plea may be accountd for because the amount of litigation arising in foreign jurisdictions and previously imported into the state was so insignificant that the doctrine was not considered. Modern times, with rapid communications, speedy travel, fertile grounds in certain localities for large verdicts, and centralization of legal representation have brought about a large influx of personal injury cases to many states, including this one, and the number of cases imported into a particular state is in direct proportion to the size of the verdicts rendered. The venue provisions of the F.E.L.A. have permitted injured employees to try their cause at any place where substantial verdicts can be obtained and where competent counsel trained in personal injury litigation are available. In a sense, the act encourages shopping for the most generous jurisdiction, and while we believe injured employees should be afforded reasonable opportunity to

present their causes to their best advantage, we do not believe the courts of this state are powerless to slow up a bargain day rush. The move of litigation to this jurisdiction has greatly increased the necessity of this court now entertaining pleas of inconvenience and now declining to exercise jurisdiction which was previously accepted in similar cases but under different circumstances and different issues.

In an article in 56 Yale Law Journal, page 1234, the writer gives the history and development of this doctrine and perhaps suggests a reason why the plea is now becoming common-place in this type of litigation:

"In court battles, as in warfare, new weapons of attack tend to be neutralized by new defenses. State laws giving courts jurisdiction over non-residents in certain circumstances have resulted in increased maneuverability for plaintiff by providing a wider choice of forum. To counter this advantage defendants have increasingly been allowed to reply on the doctrine of *forum non conveniens* to restrict the plaintiff to the appropriate state court. Both Congress and the judiciary have, during the past few years evidenced a desire to bestow the doctrine upon the federal courts, and in two decisions of the past term the Supreme Court has approved dismissals on *forum non conveniens* grounds.

\* \* \* \* \* \*

"The growth of *forum non conveniens* in this country was long hindered by decisions indicating that state courts were required by the federal Constitution to hear actions between residents of other states. The right to sue in a state court was said to be one of the 'Privileges' which each state must extend to the citizens of the several states. It is now settled that jurisdiction may be refused on *forum non conveniens* grounds, though state courts have not until recently employed the Latin tag."

In a footnote to the article there is a comment that "Words and Phrases (Perm. Ed. 1940) did not include the phrase, but it is now contained in the pocket supplement."

Since the doctrine was stagnant until recent years it can be understood why in the many cases reaching this court litigants have not sought to have the policy of this state declared. This is not to say that the precept was entirely overlooked as the legislature, by virtue of Section 104—4—9, U.C.L.A. 1943, acknowledged the desirability of such a procedure within the state as that

section permits a court to transfer a cause of action from one district to another for the convenience of counsel or in the interests of justice. It would appear from this enactment that the legislature intended the courts of this state to have the right to refuse to exercise jurisdiction in those instances where a more convenient forum was available within the state. If the principle can be applied against all persons within the state, there is no good reason why the doctrine should not be extended to causes of action arising outside the state if it is applied equally as to all litigants. Accordingly, we hold that to permit a dismissal because of forum non convenience does not offend against the Federal Constitution.

The last contention made by plaintiff questions the sufficiency of the showing made by the defendant to bring itself within the rule. This assignment requires consideration of the evidence presented to the trial court.

Granting discretionary power in the trial court to dismiss the cause for reasons of inconvenience, the power should only be exercised in exceptional circumstances and when an adequate showing has been made that the interests of justice require a trial in a more convenient forum. The mere fact that another court is more convenient for one party is not sufficient to justify a refusal to act, as any party who is a nonresident or foreign corporation can always show some good reason why a trial of the action is not convenient. The closing of the courts of this state to this plaintiff results in limiting what he considers a substantial right granted unto him. By doing so, the court acts against what plaintiff believes to be his best interests as the cause would not be instituted in this jurisdiction unless he believed he could obtain a more favorable judgment than if he were required to litigate his case in another or different forum; and the defendant would not make the motion unless it believed a less liberal jury could

be secured in the other forum as the amount of present day verdicts make the amount of costs fade into insignificance. The discretion should not be exercised in those cases where the underlying purpose is to stall, delay, or handicap persons seeking compensation for personal injuries. Only when the factors which establish there is real imposition on our jurisdiction weigh strongly in favor of the defendant should the trial court deny to the plaintiff his choice of forum.

We are convinced that at the time this matter was heard the trial court and counsel gave little heed to the factual background necessary to sustain a plea of inconvenience. The contents of the affidavit filed by the defendant were controverted and the attorney for the company requested that the matter be set down for hearing on the facts. Apparently, this request was not acted upon as plaintiff's counsel stated they would have no objection to the competency of any evidence given by counsel for the defendant and he proceeded to testify. As a result, much of the evidence on many of the factors needed to justify the decision is incomplete and missing and a substantial amount of that adopted by the court is hearsay. For instance, while the record shows it may be necessary for the defendant to call ten witnesses, three of whom it was claimed would be physicians and surgeons, the name, residences, and substance of their testimony could not be given. Likewise, as to the doctors: Who they were, where they resided, and the necessity for their presence and the substance of their testimony could not be given. The attorney testifying thought the burden placed on the defendant would be greater and prejudicial because the jury could not view the premises or the equipment. However, the cause of action was founded upon a defective hand brake and no good reason is shown why the equipment could not easily be made available to a local jury. Moreover, it is impossible to understand from the allegations of the complaint as to the manner in which the accident hap-

pened, how, or in what way, a view of the locality where plaintiff claims to have fallen to the ground would be helpful. The attorney claimed it would cost approximately $1,-500.00 for the railroad company to try the case here, but how the amount was arrived at he did not know and the record is silent as to the cost if the action was transferred to Denver. The residences of the witnesses were not shown, except that they lived in Colorado, and it may be that they resided some considerable distance from Denver, and, if so, the company would be required to house and feed them in that city if the action was tried there. If, as the attorney claimed, the doctors required extra pay to testify in Salt Lake City, there is no showing that the company would not be required to pay the same daily expert's fee to have them report to the Denver court. They could have been subpoenaed to appear in Denver, but it was admitted a professional fee was paid when the doctors testified regardless of the locale of the action. As to how far these doctors would be required to travel and the time to be consumed in that and attendance at court in either city is not shown. It is claimed that the company was required to pay the wages of its employees while travelling to or in attendance at court, but without their places of residence being shown the time to be consumed in travelling to either forum is not known to us. Construing the evidence most favorably to the defendant, the most that can be said is that some extra costs must be borne by the defendant solely because of the fact that additional travel time is involved if the witnesses attend court in this state. Little weight need be given in this case to the state lines and lack of process as the witnesses are all either employees of defendant or doctors closely associated with the company and all are available if paid at the same rate they would be paid for attendance in Denver.

Another desirable factor which might be considered by a court in determining whether or not to exercise its discretion and dismiss a case is the condition of the court cal-

endar of the jurisdiction which may subsequently
be required to hear the cause. There is a total lack of
evidence to establish this factor. We are entirely un-
advised as to the condition of the calendar in the federal and
state courts of Denver, and, while we cast no reflection on
their condition, it might be that the plaintiff in this action
would be required to wait an unreasonable length of time
before his case would be brought to issue in that jurisdic-
tion. The evidence as to this is readily available and could
have been presented to the trial court. It hardly comports
with our understanding of convenience to require a litigant
to institute his suit in a jurisdiction where it might be many
months before he can obtain any redress.  Delayed justice
does not afford an injured employee the right he should
be entitled to under the Federal act. By way of illustration,
we call attention to the fact that in the case of Motley v.
Kansas City Southern Railway Company, supra, the opinion
shows that in Cook County, Illinois, jury cases had increased
from 4,385 in 1942, to 9,249 in 1949, and the court was two
and one-half years behind in the call of its calendar. If a liti-
gant were driven to that jurisdiction by a dismissal here
such a ruling might not be a reasonable and judicious exer-
cise of discretion.

As to the inconvenience of the trial court, while plaintiff
was afforded no opportunity to meet the evidence used as
a foundation of the findings of fact on this factor because
the court apparently took judicial notice of the condition of
the calendar, any prejudice resulting therefrom is not mate-
rial because we hold the evidence insufficient. The most that
can be said for the evidence recited in the findings is that it
establishes a total of 165 civil cases at issue and set for
trial for the month of June, 1949, and that only about half
that number could be disposed of during the month. Wheth-
er this is unusual or whether the number of cases at issue
was substantially the same as they had been in previous
periods is not disclosed. Whether the district courts in that

district were running behind in the disposition of cases is not shown and the length of time before a matter might be tried is left undisclosed. While we know that suits under the F. E. L. A. are increasing in number in this jurisdiction, we do not know whether or not the 17 referred to are sufficient in numbers to interfere seriously with the transaction of the judicial business in the courts of the Third Judicial District. A certain number of these cases are settled prior to trial. Admittedly, to permit these actions to be litigated in our courts has a tendency to burden the taxpayers with some additional costs and require our citizens to perform their jury duties more often. However, unless the interference becomes such as to interfere seriously with the business of the courts the additional costs, expenses, and services should not out-weigh the right of a person to use the courts of this state. The facts presented to us do not suggest the trial court was justified in finding a serious interference with the courts or an excessive burden on the taxpayers.

We are not convinced by the present record that this is one of those exceptional cases which should be dismissed. Accordingly, the judgments is reversed with directions to permit both parties to present evidence in support of or in opposition to the motion, if they so desire. Costs to appellant.

WOLFE, and McDONOUGH, JJ, concur.

PRATT, Chief Justice (concurring and dissenting).

I concur in the discussion of the cases and the law, in the prevailing opinion, leading up to the conclusion that to permit a dismissal of a foreign action such as this, by applying the principle of forum non conveniens does not offend against the Federal Constitution; and I concur in that conclusion.

I would, however, enter upon the consideration of the application of that principle to a foreign cause of action be-

tween non-residents where the witnesses were not subject to our Court processes, with the question in mind: Why was it brought here? That question is one that the trial court might well ask, on his own motion without being guilty of prejudicial conduct. The propriety of that question lies in the fact that its answer may affect the interest of the citizens of this State to such an extent that the interest of the individual litigant must give way to the superior rights of the public of this State. The prevailing opinion appears to recognize the right of the Courts of this State to slow up a "bargain day rush." It would seem to me that the plaintiff would have to show, to some extent, a reason why the case should be tried by a court that had no power to enforce the attendance of witnesses, should they get balky. That should be required as a matter of public interest and not as a matter to the interest of the opposing litigant. If the court should conclude that there was reason for entertaining the case, then opposing litigant could assume the burden of convincing him of error, if he so held.

This brings me to another point that I think should receive some special consideration. If the trial court makes a finding that his court calendars are congested—as was done here—we, as an appellate court should accept that finding with little or no question in our minds. After all, he, of all persons, is best able to judge of that fact, and his judgment should not be overthrown except by very strong evidence to the contrary; or by an obvious error appearing on the face of the record; or by a showing of an abuse of his discretion, or bias and prejudice, resulting in a conclusion against the evidence. Here, too, the trial court should be permitted to raise the matter on his own motion—this as a matter of public interest.

The third and last point I wish to mention is that of the status of the foreign calendars where the case may have to be tried, if dismissed from our court. I am not convinced that that issue is entitled to very great weight. Naturally

it will affect the rights of the plaintiff who seeks to try his case in his State, but we must remember that the citizens of this State have not, as yet, contemplated the use of their courts as a haven of relief for citizens of a state whose judicial processes have become congested. In an isolated case or two, it probably would not be prejudicial to the interests of anyone to ascertain the condition of the foreign calendars, but to make it a regular requirement in cases such as this, is, in my opinion, unduly emphasizing its importance. I do not think it is a necessary element to consider.

These matters have received some consideration by the cases cited in the annotation in 32 A. L. R. 44.

WADE, Justice (concurring in the result).

I concur that the defendant's showing was not sufficient under the doctrine of forum non conveniens to sustain a dismissal. Though that holding disposes of this case since many other problems are discussed and determined in the prevailing opinion, I feel called upon at this time to express my disagreement with some of them.

I think that to dismiss a Federal Employers' Liability Act suit on the ground of forum non conveniens changes a long established policy of this state which policy carried out the policy of Congress in that act.

Our constitution and statutes expressly give the district court of the third judicial district jurisdiction and venue of this case and the defendant was properly served with summons. Article 8, Sections 5 and 7, Constitution of Utah; 20—3—4, U. C. A. 1943; Section 104—4—5, 6 and 7, U. C. A. 1943; and Section 104—5—11, U. C. A. 1943. The provision of Section 104—4—9, U. C. A. 1943, requiring the court to change the place of trial from one county to another when "the convenience of witnesses and the ends of justice would be promoted" does not authorize a dismissal of the

action when the trial in another state would be more convenient.

Though I find no express decision thereon, cases presenting this problem have been constantly before this court since prior to statehood. See *Seley* v. *Southern Pacific Co.*, 1890, 6 Utah 319, 23 P. 751. Appellant in his brief cites at least fifty such cases and there have been many others, among them some are cited hereinafter. Also, there have been many such cases determined finally in the district courts. During this time the business of the second judicial district (including Ogden) and third judicial district (including Salt Lake City) has been constantly increasing and the number of judges have been doubled.

The railroads, though never raising this objection, have gone to great lengths to defeat and discourage this kind of litigation. In early days the weapon was the claim of champerty between attorney and client. In *Croco* v. *O. S. L. R. Co.*, 1898, 18 Utah 311, 54 P. 985, 44 L. R. A. 285; *Alfred H. Nelson* v. *Southern Pacific Railway Co.*, 15 Utah 325, 49 P. 644, Id., 18 Utah 244, 55 P. 364; *Saunders* v. *Southern Pacific Railroad Co.*, 13 Utah 275, 44 P. 932, Id., 15 Utah 334, 49 P. 646; and *Kennedy* v. *Oregon Shortline R. Co.*, 18 Utah 325, 54 P. 988, champerty between the attorney and plaintiff was unsuccessfully urged as a defense to any recovery . In *Nelson* v. *Evans*, 1900, 21 Utah 202, 60 P. 557, the railroad's attorneys prosecuted an action to require the attorneys who successfully prosecuted the case of *Nelson* v. *Southern Pacific R. Co.*, supra, to divide their fees with a brother of the deceased; and in *In re Evans*, 1900, 22 Utah 366, 62 P. 913, 53 L. R. A. 952, 83 Am. St. Rep. 794, the same attorneys prosecuted disbarment proceedings against the attorneys Evans & Rogers, on the ground of champerty in the Nelson Case, supra, and they were found guilty of the charge and paid a specified sum to the widow of the deceased in that case to avoid being disbarred from practicing law

in this state. But twelve years later this matter was reconsidered by this court and the attorneys were exonerated from the charge of champerty and the disbarment judgment set aside and vacated on the grounds that it was obviously erroneous and void on its face. In *re Evans*, 1912, 42 Utah 282, 130 P. 217. This latter case discloses that in the *Kennedy case*, supra, the railroad's attorney secretly made a settlement with the plantiff, widow of the deceased, for whose accidental death that action was prosecuted, without the knowledge of her attorneys and that later that settlemen was set aside and the case tried and plaintiff recovered a substantially larger judgment than she received in the settlement. The railroad's attorney tried to justify this unorthodox procedure on the ground that the plaintiff's attorneys were guilty of champerty in connection with that case.

All of these cases either arose out of or were actions for the recovery of damages for accidental injuries or death which occurred out of this state by persons who were nonresidents here. As hard as the railroad's attorneys fought these cases it is evident that had they believed that the courts had the discretionary power to dismiss them on the ground that trial in this state was inconvenient, they would have so moved the court. Their failure to raise this question is a concession that the courts had not such power.

The doctrine of forum non conveniens as applied to this kind of case is of very recent development, although the principles thereof have in isolated cases and under very different fact situations been recognized for a long time. For its history, purposes and effects see: The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col. L. Rev. 1 (1929); Foster, The Place of Trial, 43 Har. L. Rev. 1217, (1929-30), and 44 Har. L. Rev. (1930-31); Forum Non Conveniens, A Federal Doctrine, 56 Yale L. J. 1234; Baucher, The Inconvenient Federal Forum,

60 Har. L. Rev. 908 (July 1947); Note, Limitations on Change of Federal Forum, 15 U. of Chi. L. Rev. 332 (Winter of 1948).

If the courts of this state now have such discretion our policy in this respect has been drastically changed by this decision. Usually such changes of policy are for the legislature and not for the courts to make. The legislature is better qualified to make the necessary study of this complicated problem and formulate a proper and workable rule to meet it than is this court by its common law process.

Though the defendant is a foreign corporation that fact is entitled to little weight on whether this action should be dismissed. Defendant operates an extensive railroad system within this state and is a heavy taxpayer here and so it should be entitled to the use of our courts. If it is entitled to use our courts for its own litigation, is the fact that it is incorporated in another state a reason why others should not be able to sue it here? While there is a showing of a number of F. E. L. A. cases which arose without the state pending here, there is no showing that there are more cases pending or tried in Utah which arose in other states than there are cases pending or tried in other states which arose in Utah. The extent of the inconvenience necessary to sustain a dismissal under the forum non conveniens doctrine is a very uncertain question. Here there is a disagreement in this court thereon and in many cases the United States Supreme Court has divided as nearly even on this question as it is possible for an odd numbered court to do. In view of that fact this court may by adopting this doctrine increase its load rather than decrease it.

In adopting the statutory and constitutional provisions above cited, the legislature expressed the intention that where a court of this state, with jurisdiction of the subject matter obtains jurisdiction of the parties within

the proper venue, it has no discretionary power to dismiss such action on the grounds of forum non conveniens. Here none of these elements are questioned. The court has jurisdiction of the subject matter, the service of process was as expressly provided for in this kind of case by statute and as the prevailing opinion points out the venue was expressly authorized. While there is no express provision that there is no discretionary power in the courts to dismiss such a case, the statutes expressly provide how and where such action may be commenced and maintained and the bench and bar have universally construed these statutes as excluding such power, so the conclusion seems unescapable that the legislature so intended. Somewhat similar statutes have been so construed in other courts. *State ex rel. Foraker* v. *Hoffman,* 309 Mo. 625, 274 S. W. 362; *Bright* v. *Wheelock,* 323 Mo. 840, 20 S. W. 2d 684, 66 A. L. R. 263; *State ex rel. Southern R. Co.* v. *Mayfield,* 359 Mo. 827, 224, S. W. 2d 105; *Gregonis* v. *Philadelphia R. C. & I. Co.* 1923, 235 N. Y. 152, 139 N. E. 223, 32 A. L. R. 1; *Hagerstown B. Co.* v. *Gates,* 1912, 117 Md. 348, 83 A. 570; *Smith* v. *Empire State M. & D. Co., C. C.,* 1904, 127 F. 462. While the first cases cited involved somewhat stronger statutes than ours because these statutes are dealing directly with the kind of actions which may be instituted, not where or how they may be instituted or maintained, in the last case cited a federal court construed a Washington state process statute, no stronger than ours, to require the assumption of jurisdiction not upon grounds of comity, but on positive statutory provisions, holding that it had no discretionary power to refuse to take cognizance of the case. The fact that the doctrine of forum non conveniens has developed since these provisions were enacted does not change the legislative intention at the time they were enacted, nor justify a different construction of the statutes enacted with such intention.

Courts have long recognized that the federal constitution

does not require the state courts to take cognizance of all cases wherein they have jurisdiction of the parties and subject matter. Though the state courts must remain open to litigants of claims arising under federal statutes the same as to litigants of similar claims from other sources. *Miles* v. *Illinois C. R. Co.*, 315 U. S. 698, 62 S. Ct. 827, 86 L. Ed. 1129, 146 A. L. R. 1104; *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A., N. S., 44. And under Article 4 Section 2, the privileges and immunities clause of the federal constitution, the states may not deny citizens of other states the right to sue while permitting its own citizens such right. *Miles* v. *Illinois C. R. Co.*, supra, *McKnett* v. *St. Louis & S. F. R. Co.*, 292 U. S. 233, 54 S. Ct. 690, 78 L. Ed. 1227. But it has long been recognized that a state may bar actions in its courts by non-residents or on claims arising outside of the state, as long as it does not discriminate against citizens of other states or actions arising under federal statutes. *Douglas* v. *New York, N. H. & H. R. Co.*, 1929, 279 U. S. 377, 49 S. Ct. 355, 73 L. Ed 747; *Northern Canadian Railroad* v. *Eggen*, 1920, 252 U. S. 553, 40 S. Ct. 402, 64 L. Ed. 713; *Barrows Steamship Co.* v. *Kane*, 1898, 170 U. S. 100, 18 S. Ct. 526, 42 L. Ed. 964; *Baltimore & Ohio R. Co.* v. *Chambers*, 73 *Ohio St.* 16, 76 N. E. 91, 11 L. R. A. N. S., 1012; *Robinson* v. *Ocean Steam Navigation Co.*, 1889, 112 N. Y. 315, 19 N. E. 625, 2 L. R. A. 636. All of these cases are under express statutory provision limiting the right to maintain an action in the state courts. We have no such statutory limitations.

Further, I believe that the Federal Employers' Liability Act, establishes not only the policy of the federal government, but that of the states. Congress is authorized to legislate on matters within the scope of its jurisdiction, not only for the federal government, but for all the states. It established not only a federal, but a state policy in allowing as it did by this act the injured employee to choose

the forum for the suit. *Miles* v. *Illinois C. R. Co.*, 315 U. S. 698, 62 S. Ct. 827, 86 L. Ed. 1129, 146 A. L. R. 1104; *Baltimore & O. R. Co.* v. *Kepner,* 314 U. S. 44, 63 S. Ct., 6, 86 L. Ed. 28, 136 A. L. R. 1222; *State ex rel. Southern Ry. Co.* v. *Mayfield,* 359 Mo. 827, 224 S. W. 2d 105; *Leet* v. *U. P. R. Co.,* 25 *Cal.* 2d 605, 155 P. 2d 42; *Boright* v. *Chicago R. I. & P. R. Co.,* 180 Minn. 52, 230 N. W. 457. In the absence of a contrary express statutory provision we should uphold this policy.

Except for *Mondou* v. *New York, N. H. & H. R. Co.,* supra, reversed by the United States Supreme Court, I find no case prior to this one where a state court, absent an express statutory authority therefor has refused to take cognizance of an F. E. L. A. case coming within its jurisdiction. The New York cases relied on in the prevailing opinion and cited herein are based on an express statutory authority as stated in the Douglas case, supra. The same is true of the Ohio case of *Loftus* v. *Pennsylvania R. Co.,* 1923, 107 Ohio St. 352, 140 N. E. 94, and the other cases cited from that state hereinabove, as well as of the cases from Illinois. The Illinois statute is quoted in the prevailing opinion in its extract from the Loftus case. The case relied on in the prevailing opinion, from Illinois, is not from an appellate court, but was based on previous Illinois decisions under the statute hereinabove mentioned. The New Jersey case of *Anderson* v. *Delaware, L. & W. R. Co.,* 11 A. 2d 607, 18 N. J. Misc. 153, relied on in the prevailing opinion is not an F. E. L. A. case. Thus all of these F. E. L. A. cases coming from appellate courts were decided before the Douglas case, and were based on express statutory provisions.

On the other hand, the more recent F. E. L. A. cases, and all that I have found not based on express statutory authority deny the discretionary power of the state courts to dismiss such actions under the doctrine of forum non conveniens. In *State* v. *Mayfield,* 1949, 359 Mo. 827, 224

S. W. 2d 105, decided since the 1848 revision of Title 28 U. S. Code, and the case of *Ex parte Collett,* 337 U. S. 55, 69 S. Ct. 944, 93 L. Ed. 1207, 10 A. L. R. 2d 921, the Missouri Supreme Court held that under its statute and the policy established by the F. E. L. A. it was required to take cognizance of such claims of its own citizens and therefore must do the same to citizens of other states under the privileges and immunities clauses of the federal constitution. The Supreme Court of California reached a similar conclusion in *Leet* v. *U. P. R. R. Co.,* 1945, 25 Cal. 2d 605, 155 P. 2d 42, as did that of Minnnesota in *Boright* v. *Chicago R. I. & P. R.,* 1930, supra, on the grounds stated at the beginning of this paragraph. All of these cases have been decided since the Douglas case and fully considered it and the doctrine of forum non conveniens, but held that doctrine not applicable to F. E. L. A. cases.

Until the 1948 revision of Title 28 U. S. Code the doctrine of forum non conveniens was held to be not available to a defendant in an F. E. L. A. suit commenced in the federal courts. This, for the reason that the special venue act required that the plaintiff be allowed to choose any federal court available to him under the act. 45 U. S. C. A. § 56. Ex parte Collett, 337 U. S. 55, 69 S. Ct. 944, 93 L. Ed. 1207, 10 A. L. R. 2d 921; *Gulf Oil Co.* v. *Gilbert,* 330 U. S. 501, 67 S. Ct. 839, 91 L. Ed. 1055; *B. & O. R. Co.* v. *Kepner,* 314 U. S. 44, 62 S. Ct. 6, 86 L. Ed. 28, 136 A. L. R. 1222; *Miles* v. *Illinois Central R. Co.,* 315 U. S. 698, 62 S. Ct. 827, 86 L. Ed. 1120, 146 L. R. A. 1104. Since that revision an F. E. L. A. suit commenced in a federal court may for the convenience of the parties and witnesses, in the interest of justice be transferred to any other district or division where it might have been brought. Ex parte Collett, supra. This revision does not allow a dismissal of the action in the federal court, but only a transfer thereof, thus avoiding the necessity of commencing over again and the possibility that the statute of limitations might bar the second action.

The provision that such action commenced in the state courts may not be transferred to the federal court is unchanged, thus retaining the policy that an F. E. L. A. claimant might choose the state court where he wished to try his case.

Mr. Justice Jackson, in his concurring opinion in *Miles* v. *Illinois C. R. Co.*, supra, gave the following reasons for Congress adopting the policy of allowing the plaintiff in F. E. L. A. cases to choose the court in which his action may be tried:

"* * * This judicial treatment of the subject of venue leads Congress and the parties to think of the choice of a forum as a private matter between litigants and in cases like the present obscures the public interest in venue practices behind a rather fantastic fiction that a widow is harassing the Illinois Central Railroad. If Congress had left us free to consult the ultimate public interest in orderly resort to the judicial system, I should agree with *Mr. Justice Frankfurter's* conclusion. But the plaintiffs say that they go shopping, not by leave of the courts themselves, but by the authority of Congress. Whether the Congress has granted such latitude is our question.

"Unless there is some hidden meaning in the language Congress has employed, the injured workman or his surviving dependents may choose from the entire territory served by the railroad any place in which to sue, and in which to choose either a federal or a state court of which to ask his remedy. There is nothing which requires a plaintiff to whom such a choice is given to exercise it in a self-denying or large-hearted manner. There is nothing to restrain use of that privilege as all choices of tribunal are commonly used by all plaintiffs to get away from judges who are considered to be unsympathetic and to get before those who are considered more favorable; to get away from juries thought to be small-minded in the matter of verdicts and to get to those thought to be generous; to escape courts whose procedures are burdensome to the plaintiff and to seek out courts whose procedures makes the going easy.

"That such a privilege puts a burden on intrastate commerce may well be admitted, but Congress has the power to burden. The Federal Employers' Liability Act itself leaves interstate commerce under the burden of a medieval system of compensating the injured railroad worker or his survivors. He is not given a remedy, but only a lawsuit. It is well understood that in most cases he will be unable to pursue that except by splitting his speculative prospects with a lawyer. The functioning of this backward system of dealing with industrial accidents in interstate commerce burdens it with perhaps two dollars of judgment for every dollar that actually reaches those who have been damaged, and it leaves the burden

of many injuries to be borne by them utterly uncompensated. Such being the major burden under which the workmen and the industry must function, I see no reason to believe that Congress could not have intended the relatively minor additional burden to interstate commerce from loading the dice a little in favor of the workingman in the matter of venue. * * *" [315 U. S. 698, 62 S. Ct. 832.]

All of the reasons therein stated and the reasons assigned for refusal of the courts to dismiss such an action brought in the federal courts prior to the 1948 revision (see cases cited above) and for refusing to allow a state court to enjoin a resident plaintiff from prosecuting such an action in a federal or state court outside of the state of his residence (see *Miles* v. *Illinois C. R. Co.*, supra; *Baltimore & O. R. Co.* v. *Kepner*, 314 U. S. 44, 62 S. Ct. 6, 86 L. Ed. 28, 136 A. L. R. 1222, together with the A. L. R. notes to these cases) are still valid reasons why this state should not now adopt such a policy of dismissing such cases under the forum non conveniens doctrine in the absence of express statutory provision authorizing that policy.

Another item which justified Congress in slightly loading the dice in favor of the injured employee, in this antiquated system of giving such employee a law suit instead of compensation, is the inherent advantages of the railroad in discovering and presenting to the court and jury all of the evidence favorable to its cause. Usually all eye witnesses to the accident, other than the injured employee, are other railroad employees whose jobs might depend on whether by their testimony they exonerated themselves from negligence in causing the accident, and in cases of fatal accident, the decedent's widow is often dependent entirely on this type of adverse witnesses to establish her claim. In non-fatal accidents where there is a question of the extent of the injury suffered the plaintiff is often dependent entirely on the evidence of doctors employed by the railroad. The railroad not only employs the doctors who treat the injured, but have in their employ every type of expert in obtaining evidence, of the workings of all kinds

of railroad equipment and operations, who are qualified and have the facilities for conducting examinations not only of witnesses, but of all the equipment involved in the accident and other railroad equipment for the purpose of discovering evidence favorable to it to be used in the trial. It has the facilities for preserving such equipment for exhibition purposes, of taking still and moving pictures of such equipment and of experiments conducted by it to be used as evidence. Most of these advantages are not available to the plaintiff.

The railroads also have a decided advantage in always having available from the moment of the accident the best possible legal counsel. They are able to constantly retain the services of the most able legal talent, who by constant practice in this field are able to keep up with the rulings and best tactics used in the trial of such cases. Such legal staffs are always able to try their cases well, present their evidence and arguments in their most favorable light and establish the confidence of the courts in their ability, soundness and integrity. From reading the second disbarment opinions, In *re. Evans, et al.* supra, such attorney seems to have convinced the court in the first disbarment hearing to believe that an obviously erroneous and void decision was correct and proper.

Under such circumstances unless there is available to the injured employee equally as capable legal services many just claims will be defeated for lack of effective presentation of such claims. The ordinary general legal practitioner with limited practice in this field and limited facilities for discovering and presenting the facts favorable to the injured employee's case is not equipped to compete with the railroad in a trial of this kind. Unless sufficient of this kind of business is concentrated in one place to keep a law firm sufficiently busy therewith so that it can keep abreast with all the latest rulings and best devices used in this kind of

litigation, and can keep available the necessary experts for consultation and use in discovering, preparing and presenting the facts to the jury, and are able to present clearly and orderly their arguments to the courts, such a trial will be very one-sided and the employee will not have a fair chance to obtain the just compensation for his injury to which he is entitled. I wonder if the desire to avoid trials of these cases in opposition to such highly skilled lawyers as have been available to plaintiff in the past is not a potent reason for this motion. For these reasons I would not depart from our past policy and adopt one of dismissing F. E. L. A. cases under the doctrne of forum non conveniens in the absence of express statutory authority therefor.